NELSON v. GEORGIA, CAROLINA AND NORTHERN RY.

1. EVIDENCE—RES GESTAE.—DECLARATIONS of a conductor immediately after an accident, not as to orders given by him, are not a part of the *res gestae.*

   *Crawford* v. *Ry.,* 56 S. C., 144, *distinguished from this.*

2. CONTRIBUTORY NEGLIGENCE.—CHARGE as to contributory negligence held to be full and clear.

Before BUCHANAN, J., Laurens, October, 1902. Affirmed.

Action by Jas. F. Nelson against Georgia, Carolina and Northern Ry. From judgment for defendant, plaintiff appeals.

*Messrs. W. R. Richey* and *F. P. McGowan,* for appellant, *cite: As to declarations of conductor being a part of res gestae:* 56 S. C., 136; 47 S. C., 13; 5 Col., 348; 28 Col., 23; 63 S. C., 560; 1 Green. Ev., secs. 113-4.

*Mr. J. J. Glenn* and *N. B. Dial,* contra. The former cites: *As to admissibility of declarations of conductor:* 21 Ency., 106; 144 Mass., 148; 9 Gray, 245; 17 N. Y., 131; 26 Ga., 113; 92 Va., 327; 57 Ill., 265; 1 Ency., 552; 119 U. S., 551; 27 S. C., 63; 19 S. C., 373.

April 19, 1904. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought to recover damages for personal injuries alleged to have been sustained by plaintiff through the negligence of the defendant, and resulted in a verdict and judgment for the defendant. Plaintiff's appeal involves two questions:

1. Whether the Court erred in excluding the declaration of F. H. Harold, the conductor, made after the collision in which plaintiff was injured, it being claimed that

such declarations were admissible as part of the *res gestae,* and as the statement of the representative of the defendant company within the scope of his agency.

In order to show precisely how the question arose and the exact ruling of the Circuit Court, we quote from the "Case" as follows:

"Q. Was the conductor there? A. Yes, sir; he came down there and asked me was anybody hurt. The mail agent was knocked down, and I told him I had a lick over the head and was mashed in the stomach, but I did not know that it amounted to very much. It hurt me all the evening. Q. What were these cars shoved with—what was attached to them? A. The engine. Q. Was the engine attached to them when they struck the mail car? A. I declare I do not know; all I know is what the conductor said—Mr. Glenn: We object to that. Mr. Richey: I think that he can tell what the conductor said. That is a part of the *res gestae.* Mr. Glenn: I understand you to say that the conductor told you afterwards. A. I was down there, and he came there right after the accident. Mr. Richey: The conductor, may it please your Honor, was there representing the master, and it was just the same as the railroad company itself speaking through the conductor. What he said there I think is perfectly competent to come in. Mr. Glenn: In the first place, your Honor, it depends entirely upon what they were talking about. He certainly would not have the right to bind the company for matters that did not come within his business. He is not the general agent of the company. In fact, I do not understand that he has proven yet the extent of his authority, or anything of the kind. Mr. Richey: Who was the conductor in charge of the train? A. It was his first trip. He was down there the first time I ever seen him. Harold; I don't know for certain that was his name. Q. You have been connected with the railroad some time? A. Yes, sir. Q. What is the duty of the conductor? A. Running the train. Q. Who has supervision over the hands and engineer? A. The conductor. Q. Now, what was it

the conductor said when he came down there to the mail car, after the accident? Mr. Glenn: We object. The Court: I do not know what the answer will be. Did the conductor speak to you in reference to the accident? A. Yes, sir, he did. Mr. Richey: We can now ask him what he said. The Court: It is owing to what he said. If he was the master and gave orders, he can state what order he gave him, but he cannot recite any words as to how it happened, in his opinion. Mr. Richey: I did not ask him how it happened. The Court: You know what his answer is going to be; I don't. This is your witness, and you are supposed to know what you are going to prove by him. Mr. Richey: What did the conductor say in reference to that accident? Mr. Glenn: We object to that. The Court: The objection is sustained, so far as the Court is now advised by the evidence now in."

With respect to the question whether the declaration was admissible as *res gestae,* it will be noticed that the declaration was made after the collision, although, doubtless, a very short time after. This subject has been fully discussed in the recent case of *State* v. *McDaniel, ante,* and reference may be had to that case for the rule governing the admissibility of declarations not strictly concurrent with the litigated transaction. Under the rule there stated, we do not think the Circuit Court committed reversible error.

The case of *Crawford* v. *Railway Co.,* 56 S. C., 144, 34 S. E., 80, was quite different from this; for in that case the question was whether cattle had been negligently injured in transportation, and the declaration, "he would kill those damn cattle before he got to Charlotte," was made by the person entrusted with the duty of running the train which carried the cattle, while the train was being loaded with the cattle. With respect to the question whether the declaration was admissible because made by defendant's agent within the scope of his agency; on this point the Court was careful to advise plaintiff's counsel that the witness could give the conductor's declarations as to orders by him, but that decla-

rations of the conductor as to how the accident happened, in the opinion of the conductor, were not admissible. The conductor was not shown to have been operating the cars which brought about the collision except through orders, and it is clear that the hearsay opinion of the conductor as to how the collision occurred was inadmissible. Even after the suggestion of the Court, counsel failed to show the Court that the proposed declarations were within the scope of the conductor's agency. The ruling was not erroneous.

2. The second question relates to the charge as to contributory negligence, the exception being as follows: "Because his Honor erred in charging defendant's fourth request, which was as follows: '4. Even if the defendant was guilty of negligence and the plaintiff was injured thereby, yet if the plaintiff by his own negligence contributed to his injuries, he cannot recover. The plaintiff must be free from fault himself.' The error being the omission from the proposition the requisite that contributory negligence must be a direct and proximate cause to the injury, and without which the injury would not have happened." A reference to the case shows that the Court did not charge the fourth request unqualifiedly, for in response to the request the Court said: "I have already charged you that it must be a direct contribution. It must be a contribution to the particular act that caused the injury—must be that particular transaction charged in the complaint."

The charge was full and clear on this point, as the following language of the Court shows: "Now, the law says with reference to contributory negligence, notwithstanding the fact somebody else was guilty of negligence, yet if you contributed to it; but it is not a vague and remote contribution that robs one of his rights to recover, because in contributory negligence the contribution must be direct and proximate, and must have some bearing upon the act that was charged caused the injury, and it must be in that particular respect—must be a contribution to the particular act alleged

30—68

to have caused the injury, not about something else, not in relation to some other transaction, but must be a direct and proximate contribution to that particular act of negligence done by a person who was charged, to have been the author of the wrong." The exception is, therefore, without foundation.

The judgment of the Circuit Court is affirmed.