8283

BENBOW v. HARVIN.

1. SECONDARY EVIDENCE—DEEDS—RECORDS.—Copy of the record of a deed is admissible as secondary evidence upon failure of adverse party to produce the original on notice. Such evidence is also admissible on proof that adverse party had said on a former trial that the original deed had been lost.

2. EVIDENCE—TITLE.—AN ADVERSE PARTY may be sworn by his adversary and his statement as to his source of title, or his declarations as to it, are competent without proof of the deed under which he claims or the copy.

3. IBID.—IBID.—A party may prove title from a common source by letter of his adversary addressed to a third party that he held from a certain party. Also by a summons and complaint between other parties for some of whom one defendant here was attorney and

under whom he claims by a deed made in compromise of that suit, the complaint showing a claim inconsistent with the one now made by him, although the papers appear not to have been filed or served.

4. CHARGE.—From the statement of the Court to a party that he could call his adversary as a witness and that he would only be bound to a certain extent by his evidence, it cannot be inferred that the jury were prejudiced against the witness as his Honor only meant to say he could show the facts to be otherwise than as the witness stated them.

5. ISSUES—TITLE.—When a plaintiff proves his title by competent evidence to the same source as that claimed by defendant, he makes out a case which requires submission of the issue of title to the jury.

6. EVIDENCE—RES GESTAE—DECLARATIONS.—The declarations of trustees while dividing lands under power conferred on them by deed are admissible as part of the *res gestae,* but where one division was made by such trustees and after their deaths their successors make another the declarations of the second trustees in the form of instructions to the surveyors and noted on the plat, are not admissible against those claiming under the first division.

7. CHARGE.—In this case, if the instruction that the trustees may have given some of the beneficiaries personal property and lands were error, it was not prejudicial.

Before PRINCE, J., Clarendon, September term, 1910. Affirmed.

Action by Joel Benbow and Susannah L., his wife, against J. B. Harvin *et al.,* of whom H. L. B. Wells is appellant.

*Messrs. Lee & Moise,* for appellant, cite: *Declarations of a party at another time as to a lost deed is not admissible:* 8 Ency. 453, 454; 3 Des. Eq. 273; 5 Rich. 373; 1 Ency. 600; 79 S. C. 253; 39 S. C. 441; 3 Brev. 40; 29 Ala. 457; 1 Enc. Ev. 601, n. 26. *Declarations of the trustees who were dead should have been admitted:* 26 S. C. 235; 63 S. C. 439.

*Mr. Charlton DuRant,* contra, cites: *Declarations of the trustees after they parted with possession were properly ruled out:* 2 McM. 44.

August 7, 1912.   The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   In the year 1838, Amorintha L. Anderson, widow of Thomas Anderson, being about to contract matrimony with J. R. Thames, executed a marriage settlement, wherein she conveyed to trustees her interest in the estate of her deceased husband, in trust for her sole use during her life, and, at her death, Thames surviving, to divide the same into two parts, and distribute one part among her three daughters by Anderson, or the survivor or survivors of them, the issue, if any, of any deceased daughter taking the parent's share, and to permit Thames to use the other part during his life, and, at his death, to divide the same among her daughters the same as the other half. Other provisions of the deed, depending on contingencies which did not happen, need not be recited.

Mrs. Thames died about 1872.   Emeline, one of her daughters, had married Bochette and died, leaving issue. The other two survived.   Ellen T. had married Harvin and had children.   The other, Sarah, never married at all. About 1873, after the death of Mrs. Thames, the trustees divided a tract containing 271 acres between her daughters and Thames, but, so far as the evidence shows, left no record of that division, and from their failure to do so, this litigation and its principal difficulties arose.

There is testimony tending to prove that the trustees went upon the land, and, beginning at a point on the southern boundary, and about midway thereof, ran a line through the tract approximately north, which divided it into two halves, and assigned the eastern half to Thames, and divided the western half among the two daughters and the Bochette heirs, giving each of the daughters a third and the Bochette heirs together a third of that half, and that the northernmost tract of that half, containing forty-five acres, nearly all of which lies north of Duck branch, which extends entirely across the whole tract from east to west, was

assigned to Sarah Anderson.   This is the division which the defendants contend was made.

On the other hand, there is evidence tending to show that they began on the eastern boundary and ran a line westward across, or at least partly across the tract, and along and near Duck branch, and that all the land north of that branch was assigned to Sarah Anderson; and this is the contention of the plaintiff.

The plaintiff, who claims as devisee of Sarah Anderson, proved by a number of witnesses that her devisor had possession of the land north of Duck branch for from fifteen to seventeen years before her death.   She devised her estate, without particularly describing it, to her sister, Mrs. Harvin, for life, and, at her death, to the plaintiff, who is a daughter of Mrs. Harvin.

Sarah Anderson died in 1892; Thames died in 1898, and Mrs. Harvin died in 1907.   After the death of Thames, the original trustees being dead, their successors undertook to make a second division.   The evidence is not clear whether they undertook at that time to make a new division of the entire tract, or whether they simply divided the part which had been assigned to Thames in the first division between the Bochette heirs and Mrs. Harvin, Miss Anderson being then dead.   But there is in evidence a plat, dated March 2, 1899, of the whole tract, which is divided thereon into six parcels, and the surveyor certifies on the plat that it was made according to the instructions of J. P. Brock and R. R. Dingle, who were, according to the testimony, acting as trustees, being the heirs and successors of the original trustees.   This plat shows a north and south line, which the defendants contend was the line made by the trustees at the first division, and which divided the tract into the two halves, one of which was divided among the two daughters and the Bochette heirs, and the other assigned to Thames. On a tract of forty-five acres in the northwest corner of this plat is the notation, "set off to Miss Sarah Anderson,"

and the tract east of it, and lying mostly north of Duck branch, is marked, "set off to Mrs. E. T. Harvin."

The defendants concede the plaintiff's right to recover the forty-five acres which was so "set off" to her devisor; but the plaintiff contends that this was not the first division made, and that, under the first division, Sarah Anderson took all the tract north of Duck branch.

Another complication arises from the fact that, after the death of Sarah Anderson, in 1892, and while Mrs. Harvin was in possession of her share, as life tenant under her will, the Bochette heirs, by the defendant Wells, as their attorney, brought suit against Mrs. Harvin for partition of the Sarah Anderson land, presumably on the supposition that she had only a life estate therein, and that, upon her death, it went to Mrs. Harvin and the Bochette heirs under the deed of trust. In that complaint, which is signed by the defendant Wells, as plaintiff's attorney, the share of Sarah Anderson is described as containing one hundred acres, more or less, and, according to the evidence and the boundaries given in that complaint, it comprised all of the original tract north of Duck branch. That suit resulted in a compromise, by which Mrs. Harvin conveyed to the defendant Wells and J. F. Bochette, whose interest Wells acquired afterwards, 71 acres of the tract, which, according to the plat made for Wells and Bochette, and dated January 6, 1898, lies wholly north of Duck branch, and which includes not only the 45 acres, which the defendants contend was originally set off to Sarah Anderson, and which they concede the plaintiffs' rights to recover, but 26 acres more of the land north of Duck branch. Mr. Wells is in possession of this 71 acre tract, and the other defendants, the heirs of Mrs. Harvin, are in possession of the remainder of the tract north of Duck branch.

The plaintiff brought this action to recover all the land north of Duck branch. She bases her right to do so upon two grounds: 1. Because that was the land set off to Sarah

Anderson in 1873 as her share of her mother's estate under the trust deed; but if not, then, 2. That her devisor had acquired title thereto by adverse possession for more than ten years before her death. The jury found for plaintiff all the land north of Duck branch. The defendant Wells alone appeals.

For the purpose of proving a common source of title, plaintiff gave the defendant Wells notice to produce the deed to the 71 acres from Mrs. Harvin to him and Bochette. Upon his failure to produce it, and after further laying the foundation, by proving that he had said at a former trial of the case that the original was lost, plaintiff was allowed to introduce a copy from the record. We see no possible ground for appellant's objection to the copy. The failure to produce after notice, gave plaintiff the right to introduce secondary evidence. Besides, Mr. Wells is a party to the action, and his declaration that the deed was lost was sufficient to admit secondary evidence of its contents on that ground. Furthermore, he was afterwards sworn as a witness for plaintiff, and testified that he claimed the land under that deed and that it was given in settlement of the partition suit above mentioned. He could have been interrogated as a witness, or his declarations as to the source of his title would have been admissible, even without the deed or the copy. Every man is presumed to know the source of his title. The fact that plaintiff also sought to show title in her devisor by adverse possession cannot affect the question, because she had the right to prove title in herself in as many ways as she could. There was, therefore, no error in admitting in evidence a letter from defendant Wells to a magistrate in the neighborhood of the land, in which he stated that he held it under a deed from Mrs. Harvin. Nor was there error in admitting the summons and complaint signed by Mr. Wells, as attorney for the Bochette heirs as plaintiffs against Mrs. Harvin. It was competent,

because it tended to show common source of title, and the complaint also tended to show that, at that time, Mr. Wells, as attorney for the Bochette heirs, claimed, and that Mrs. Harvin, admitted that all the land north of Duck branch had belonged to Sarah Anderson. As Mr. Wells was only the attorney for the plaintiffs in that suit in making that claim, it might not operate as an estoppel against him, and it was not claimed that it did, but it was nevertheless competent evidence, because it tended to show that his contention in this action that Sarah Anderson never owned or had possession of more than the 45 acres in the northwest corner of the plat in evidence is inconsistent with the contention he made for the Bochette heirs and of which he was a beneficiary. It is immaterial that the summons and complaint admitted in evidence was not a record of the Court, or that there was no evidence that it had ever been served, because Mr. Wells testified that the deed on which he relied was made in settlement of that suit. The objection that the complaint in that case does not describe the property in dispute in this action is without foundation in fact. There is abundant evidence that it does; and Mr. Wells himself testified that it was the same.

The plaintiff's attorney attempted to prove the stenographer's typewritten notes of the testimony given by Mr. Wells at a previous trial for the purpose of introducing it in evidence, but the stenographer failed to identify his notes. Thereupon, his Honor suggested that he put Mr. Wells on the stand as his witness. Plaintiff's attorney remarked that he did not like to put up an adverse party. His Honor replied that he would be his witness only to a certain extent, and he would not be bound by what he said. It is objected that this remark was prejudicial as detracting from the weight of Mr. Wells' testimony and as intimating to the jury that it was not binding on plaintiff. There was no error in the remark. While a party who calls his adversary as a witness makes him his

witness to the same extent that he makes any other person whom he calls as a witness, still he is no more concluded by the testimony of his adversary than he would be. by the testimony of any other witness whom he might call. But just as in the case of any other witness, having called him, he may not impeach him or contradict him, but he may prove the facts to be otherwise than as he testifies them to be. *State* v. *McKay,* 89 S. C. 234. And that is all his Honor meant, and there was no ground for the jury to draw any other inference from what he said.

It would be a useless consumption of time to discuss the six grounds upon which appellant contends that the Court erred in refusing to grant his motion for nonsuit. When plaintiff traced her title by competent evidence to the same source from which appellant claimed, she made a *prima facie* case which required the submission to the jury of the issue: Who has the better title from the common source?

Appellant complains that the Court refused to allow a witness to testify to declarations made by the trustees and the surveyor at the second division. His Honor ruled that any declarations made by the trustees who made the first division, and their instructions to the surveyor, were admissible; but that, as the rights of the parties had vested under that division, the declarations of the trustees who made the second division, or their instructions to the surveyor, who made the plat in evidence, at the time of the second division, were not admissible. This ruling was correct. The declarations of the trustees and their instructions to the surveyor at the time of the first division were admissible as part of the *res gestae.* They were explanatory of their acts. But neither the acts nor the declarations of the trustees who made the second division, over twenty years afterwards, were competent as evidence to affect rights which had vested under the first division. Therefore, his Honor rightly ruled that the plat made in March, 1899, at

the time of the second division, was not admissible, as evidence of the first division.

It is next contended that the Court erred in charging that under the trust deed the trustees could, in dividing the estate, give some of the parties in interest personal property and the other real estate, when there was no evidence that any such division was made. If there was error in this respect, which is not conceded, it was clearly not prejudicial.

The real, and practically the only, issue in the case was: What property was set off to Sarah Anderson at the first division? The Court distinctly and repeatedly instructed the jury that plaintiff was entitled to recover that and only that, so far as her claim under Sarah Anderson's will was concerned. And the appellant practically conceded at the trial that she was so entitled. The verdict establishes the facts according to plaintiff's contention.

Affirmed.

MESSRS. WATTS *and* FRASER *did not hear this case.*