12862

CHANTRY v. PETTIT MOTOR CO.
MILLER v. SAME

(152 S. E., 753)

*Messrs. Huger, Wilbur, Miller & Mouzon,* for appellant,

*Messrs. A. Russell McGowan, Irving Steinburg,* and *Brantley Seymour,* for respondents,

March 21, 1930.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

These two suits were, by agreement of counsel, tried together at the May, 1929, term of the Court of Common Pleas for Charleston County. The suit brought by J. P. Chantry was commenced on February 16, 1929, by service of a summons and complaint, and the action brought by Mrs. Sarah Miller was begun by the service of a summons and complaint on February 21, 1929. Both actions arose out of the same accident. The plaintiff Chantry claimed

damages in the sum of $10,000 for personal injuries, damage to his car, and loss of its use, alleged to have been caused by the willful negligence of the defendant, its agents and servants, in a collision with a Buick car owned by the defendant, which occurred on January 28, 1929. The plaintiff Sarah Miller was a passenger in the car driven by Chantry and claimed damages for personal injuries in the sum of $20,000, alleging the same specifications of negligence as those stated by the plaintiff Chantry. The defendant, Pettit Motor Company, by its answer, admitted that the car, in which plaintiffs were riding at the time of the accident, was struck by a Buick car owned by the defendants but denied all the other allegations of the complaints.

The cases were tried May 8, 1929, before Honorable John S. Wilson and a jury. The testimony of the two plaintiffs was that, while they were riding in a Studebaker roadster, owned and driven by Chantry, towards the City of Charleston, at about twenty miles an hour, the car was struck a severe blow from the rear by a Buick car, the force of which drove the Studebaker car into the ditch beside the road and turned it over, pinning plaintiffs beneath the same, causing injuries to the car and both plaintiffs.

The testimony of plaintiffs' witnesses was, in substance, as follows: That the Buick car which ran into the rear of the car in which the plaintiffs were riding was driven by a negro who seemed under the influence of either alcohol or a drug. That it bore a dealer's demonstrator's license. That the driver at the scene and immediately after the collision admitted to the plaintiff Chantry that he was working for Pettit Motor Company and also to the witness, F. W. Rivers, at the same time, that "he was working for the Pettit Motor Company. To 'phone them and they would get him out of this trouble. That he has been working for them a number of years and had one accident and they would take care of him." That Pettit Motor Company's truck came up and took possession of the Buick automobile.

The testimony of defendant's witnesses was, in substance, as follows:

The Buick car which was involved in the accident had been owned until a short time before the accident by Mrs. Riley Ely. Her husband was the president and general manager of the defendant, Pettit Motor Company, a corporation engaged in the business of selling and repairing automobiles. A short time prior to the accident, Mrs. Ely traded the Buick to the Pettit Motor Company for a four-door Ford sedan. At the time this trade was effected, a demonstrator's license was placed on the Buick and this license was on it at the time of the accident. Pettit Motor Company could not make immediate delivery of the Ford, and permitted Mrs. Ely to continue to use the Buick until delivery could be made of the kind of Ford she wished. The negro, who was driving the Buick at the time of the accident, was Lee Hamilton. At the time the accident occurred, he was employed as butler and chauffeur at the home of Mr. and Mrs. Ely, and had been employed by them as such for several years prior to the accident. He had never at any time worked for the Pettit Motor Company, but was the personal servant of the Elys. He had never been allowed to use the Elys' car for any business of his own, except on one occasion when they allowed him to use it to attend his wife's funeral. He had never had an accident prior to this one.

Mrs. Ely was in Charlotte, N. C., at the time of the accident. Her sister, Mrs. Menken, was in the habit of using the car when Mrs. Ely was away from the city, and at about 2:30 on the afternoon of the accident Mrs. Menken got Hamilton to drive her in the Buick car to the Gloria Theater. She told him to wait outside the treater until she came out. Instead of doing this, Hamilton, without permission, drove the car to a place seven miles distant from Charleston, in order to try to collect a debt due him personally. He did not find the man who owed him the money, and was told

he had gone to Summerville. He then drove to Summerville in the hope of finding him, but failed to do so. On the way back from Summerville a negro asked him for a lift. He took the man into the car, and as they were approaching Charleston the accident occurred which is the subject of this suit. Mr. Ely learned of the accident shortly after it occurred and sent a truck of the Pettit Motor Company to bring the Buick to the city. After the accident Mr. Ely continued to employ Hamilton, for the reason that Hamilton owed him for some advances he had made him, and he expected him to repay the debt in service.

Hamilton denied that he had stated after the accident that he worked for the Pettit Motor Company, and, on being asked whether he had not made such a statement at a hearing before a magistrate when he was charged with reckless driving at the time of this accident, he replied that he did not recall having made such a statement, and that, if he had made it, it was not true.

In reply plaintiffs produced a witness who testified that, at the hearing before the magistrate, Hamilton had said he had been working for the Pettit Motor Company for several years and had been driving the car with the knowledge of that company.

At the close of all the testimony, the defendant moved for a direction of verdict in its favor in both cases, on the grounds that the evidence failed to show that the person driving defendant's car at the time of the accident was its agent or servant; that the evidence showed that the person driving its car was not engaged on its business, but on a personal mission, and was using its car without its authority or permission, and that, even if there was evidence that he was using it with defendant's permission, the unsupported testimony was that he was using it on his own private business.

The presiding Judge overruled the motion, and the case was submitted to the jury, which found a verdict for the

plaintiff Chantry in the sum of $4,000, and for the plaintiff Miller in the sum of $2,000.

The defendant thereupon moved for a new trial of both cases upon substantially the same grounds as those urged in support of the motion for a directed verdict, and upon the ground that there was not sufficient evidence to support the verdicts. The presiding Judge took the motion under advisement, and on May 27, 1929, signed an order refusing the motion. Defendant now appeals upon the exceptions hereinafter stated.

The respondent thus states the questions for determination:

"While the appellants' exceptions are twelve in number, and they by their brief sub-divide these twelve exceptions into five questions, we submit that there are only two issues raised in the entire case, to wit:

"1. That the trial Judge committed no error in admitting the statement made by the negro driver, Lee Hamilton.

"2. That the trial Judge did not abuse his discretion in refusing to direct a verdict or grant a new trial on the ground of insufficiency of evidence as to the agency of the driver and that he was acting in the scope of his employment."

We see no error in admitting the statement of Lee Hamilton; it was part of *res gestae*.

In the case of *Snipes v. Augusta-Aiken R. & E. Corp.* 151 S. C., 391, 149 S. E., 111, 112, decided by this Court on July 15, 1929, where the vital issue was identically the same as the issue raised in the instant case, to wit, "whether the driver was an agent of the defendant company acting within the scope of his employment," the statement of the alleged agent was made forty-five minutes after the collision, and a second declaration was made a month later. The trial Judge ruled in that case that the statement was admitted not as a part of the *res gestae,* but on the theory that: "Although not a part of the *res gestae* as to the immediate

transaction, a part of the *res gestae* as to the general transaction in its entirety.".

The Court affirmed that decision, with Justice Cothran dissenting. Justice Cothran dissented, however, on the ground that, since the statement was not a part of the *res gestae,* it was inadmissible, and in his dissenting opinion stated that, if it had been a part of the *res gestae,* it would have been admissible, and, if admissible, the jury had a right to believe it, in which event the judgment should be affirmed.

There is no question that the statement in the case at bar was a part of the *res gestae,* as the Court in passing on the objection to the introduction of the testimony said: "I will allow him to say what he said right at the accident, admis· sions after that I don't think are competent."

Mr. Tiffany (2d Ed.) Par. 106, as Justice Cothran stated in the *Snipes case, supra:* "makes the matter as clear as sunlight."

In *Shelton v. Railroad Co.,* 86 S. C., 98, 67 S. E., 899, 901, this Court said: "In *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661, it was held that, while the declaration, in such cases, to be admissible as part of the *res gestae,* must be substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterance of the mind, while under the active influence of the transaction, the circumstances precluding the idea that it is the result of reflection or design."

It will be noted the trial Judge, in the first instance, would only permit the statements made right at the accident which, as stated, was part of the *res gestae.* In addition, however, if we assume for the sake of argument that it was not a part of *res gestae,* any such error was cured when counsel for appellant failed to move for a nonsuit and thereafter asked his witness, Lee Hamilton, whether or not he made any such statement, and, if not, what statement did he make. And again

along the same line of questioning, appellant's counsel asked the same negro if they had ever allowed him to use the car for himself, to which he replied, only once. Thereafter, under cross-examination, the negro denied that he had made a contradictory statement in the Magistrate's Court to the effect that he was in the habit of driving it all the time with the defendant's knowledge. In reply to which the plaintiff put up, without objection, a practicing attorney who testified that the negro did so state in the Magistrate's Court.

In the absence of a motion for a nonsuit, such questions by appellant would cure any error, even if it had been committed so far as the introduction of this line of testimony was concerned.

In *Williamson v. Pike,* 140 S. C., 381, 138 S. E., 831, 832, Mr. Justice Blease says:

"In the case of *Osteen v. S. C. Cotton Oil Co.,* 102 S. C., 146, 86 S. E., 202, L. R. A., 1916-B, 629, the following was held:

" 'One who is in possession of property of the owner, and who uses it in the service of the owner, is presumptively a servant of the owner.' Syllabus.

"The principle announced in the *Osteen case* has been approved in other cases. See *Keen v. Army Cycle Mfg. Co.,* 124 S. C., 342, 117 S. E., 531, and *Burbage v. Curry,* 127 S. C., 349, 121 S. E., 267."

Under the authority of the cited cases, we think the facts reviewed by us were entirely sufficient to sustain the action of the circuit Judge in sending the case to the jury. *Mooney v. Gilreath,* 124 S. C., 1, 117 S. E., 186.

We see no error on the part of his Honor in refusing to direct a verdict or grant a new trial. He did not abuse his discretion; there was testimony to go to the jury as to whether the driver was the agent of the appellant acting in the scope of his authority.

All exceptions are overruled, and judgment affirmed.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE BLEASE (concurring): The two questions in this case are these: (1) Was it proper to admit the declaration of Hamilton, the driver of the automobile, to the effect that he was employed by the defendant corporation? (2) Was the evidence as to Hamilton's agency of the defendant sufficient to take the case to the jury?

In *Shelton v. Southern Railway*, 86 S. C., 98, 67 S. E., 899, 901, our Court said this: "In *State v. McDaniel*, 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661, it was held that, while the declaration, in such cases, to be admissible as part of the *res gestae*, must be substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterance of the mind, while under the active influence of the transaction, the circumstances precluding the idea that it is the result of reflection or design, still no hard and fast rule can be laid down as to the precise time between the occurrence and the declaration; *that each case must be decided upon its own circumstances; and that much should be left to the sound discretion of the trial Judge;* and that this Court will not reverse his ruling, unless it clearly appears from the undisputed circumstances in evidence that the declaration ought to have been admitted or rejected." (Emphasis added.)

In *Land Mortgage, etc., Co. v. Gillam*, 49 S. C., 345, 26 S. E., 990, 29 S. E., 203, it was held: "Agency may be shown by the acts of the agent and surrounding circumstances." Syllabus.

In *Watkins v. R. Co.*, 97 S. C., 148, 81 S. E., 426, it was decided: "A statement of a person that he is the agent of another does not in itself, prove agency, but is competent as a circumstance, in connection with other evidence, to prove agency." Syllabus.

In the case at bar, the evidence as to the statements of Hamilton met the required conditions, according to the authorities quoted. At the time of the accident, he was driv-

ing an automobile owned by the defendant—the president of the defendant corporation so testified. The car he was driving carried the demonstrator's license plate issued by the State Highway Department to the defendant. Immediately after the accident, while the two plaintiffs, Chantry and Mrs. Miller, mangled and bloody, were being aided by persons who had come to their assistance, Hamilton said he was employed by defendant, and requested that the defendant be notified of the accident. The defendant immediately sent for its car. The president of the defendant company later on paid the fine imposed in the Magistrate's Court upon Hamilton for reckless driving.

Hamilton, in trouble, thought he was employed by the defendant, and he called on the defendant for help. Later, when the suit was being tried, the defendant was in trouble, and the defendant needed Hamilton's help. A wise jury, looking into the faces of the witnesses, may have detected the reason of conflicting statements on the part of Hamilton. They were judges of the credibility of the witnesses.

The president of the defendant company testified that he had traded a new Ford automobile to his wife for the Buick, which was operated by Hamilton at the time of the accident; that he was permitting his wife to use the Buick until the new Ford arrived; that he had put a demonstrator's license on the Buick; and that his wife was using the Buick only as a temporary arrangement. This was some evidence to prove that the president of the defendant corporation was carrying on its business of selling automobiles. To hold his wife as a customer, he was letting her use the company's automobile until the new Ford came.

In Act No. 203 approved April 25, 1927 (35 St. at Large, 370), entitled, "An Act Relating to the Payment of Annual License Fees by Dealers in Motor Vehicles, and the Use of Motor Vehicles Owned by Dealers," there is contained this provision: "License plates issued to a dealer shall be used exclusively upon cars belonging to the licensed

dealer and in usual course of said business." Under the language of that statute, when the defendant corporation put its demonstrator's license plate on the Buick, it said to the world that the Buick was exclusively owned by the defendant. When the company sent it out upon the public highways, it vouched to the public that the Buick was being used "in usual course of said business" of the corporation, which was to deal in automobiles.

Section 97 of the Criminal Code, Vol. 2, Code of 1922, makes it unlawful for any person to knowingly or willfully "use any motor vehicle * * * without the consent of the owner thereof." The law does not presume the violation of a criminal statute. When Hamilton was in the Buick of the defendant, a corporation engaged in the sale of automobiles, and had on the Buick a demonstrator's license, which only the defendant had the right to use on its cars, the presumption was that Hamilton had the consent of the owner to operate that Buick. That presumption became stronger when it was conclusively shown by the evidence in the case that the president of the corporation, when its car had been damaged in the collision, did not prosecute Hamilton for his violation of law, but on the other hand advanced to Hamilton the necessary money to pay the fine imposed upon him for reckless driving.

Our rules of evidence must meet the conditions of the time. Innocent men, women, and children, lawfully and properly using the public highways, who are injured by the reckless driving of an irresponsible negro chauffeur, doped or intoxicated, as the testimony in this case shows was probably Hamilton's condition, should not be defeated of their right to recover damages, because, after the accident, the owner of the car, the driver of which did the damage, recalls that his business is incorporated, and that the chauffeur was employed by his wife and not by the corporation of which he is an officer. In the *Shelton case, supra,* this Court properly said that the admission of declarations by

an agent under the *res gestae* rule are very much within the discretion of the trial Judge. I think Judge Wilson viewed all the *surrounding circumstances* of this case and exercised the discretion allowed him, under the law, wisely, with the view of administering justice and to aid in the protection of the lives of our citizens, who have the right to use our public highways.

I agree with the Chief Justice that the judgment below should be affirmed.

MR. JUSTICE STABLER concurs.

MR. JUSTICE COTHRAN (dissenting): For convenience I will address my observations to the case first above stated; they will apply as well to the second.

The elements essential to establish the plaintiff's cause of action were:

1. That the car which collided with the car in which the plaintiff was riding belonged to the defendant Pettit Motor Company.

2. That the driver of the colliding car was an agent of the defendant company, acting at the time in the course of his employment.

3. That the collision was caused by the wrongful act of such agent.

4. Injury and consequent damages.

The plaintiff recognized the obligation resting upon him to establish these elements, for he alleges in his complaint that the colliding car was at the time owned and operated by the defendant, and was being driven by one of its agents whose negligence and willfulness caused the collision and consequent injury to his damage so many dollars.

I think that there was sufficient evidence of the defendant's ownership of the car to justify a submission of that issue to the jury. It appears from the evidence offered *by the defendant* that the Buick car, the colliding car, had been owned by Mrs. Ely, wife of the president of the defendant company; she had traded it to the defendant for a Ford

sedan; it had been delivered to the defendant, and a demonstrator's license tag had been placed upon it; the delivery of the Ford sedan had been delayed, and, pending its delivery, Mrs. Ely was permitted to use the Buick as she pleased; when informed of the collision, the defendant sent its truck to the scene and took charge of the Buick car. I think that it might have been a legitimate inference from these circumstances that title to the Buick car had passed from Mrs. Ely to the defendant.

I do not think, however, that there was a particle of *legitimate* evidence tending to show that, at any time, Hamilton, the negro driver of the car, was ever an employee or agent of the defendant, or that, if such, he was at the time of the collision actually acting within the course of his employment or agency.

The sole evidence offered to establish this essential element was a declaration made by the driver of the car, immediately after and at the scene of the collision, that he was working for the Pettit Motor Company; "to phone them and they would get him out of this trouble; that he had been working for them a number of years and had one accident, and they would take care of him."

The defendant objected to the admission of the testimony of the plaintiff and of one of his witnesses detailing this declaration, upon the ground that it was hearsay and inadmissible.

It appears, though not distinctly, that his Honor the presiding Judge, admitted the testimony upon the ground that it was a part of the *res gestae*. That is the contention of counsel for the respondent, and, in the leading opinion by the Chief Justice, it is reiterated: "We see no error in admitting the statement of Lee Hamilton, (the driver); *it was part of the res gestae.* * * * There is no question that the statement in the case at bar *was a part of the res gestae.* * * * It will be noted the trial Judge is the first instance,

would only permit the statement made right at the accident, which, as stated, *was part of the res gestae.*   *   *   *   "

There is quite a good deal of confusion of thought and lack of discrimination manifest in the treatment of the subject of the admissibility of declarations of an agent. The lack of discrimination and consequent confusion of thought is demonstrated by the failure to differentiate between the declarations of an agent which are part of the *res gestae* and those declarations which were made *in the course of his employment* and while the matter in controversy was actually pending. The declarations of an agent, which are shown to have been a part of the *res gestae,* are admitted, not because he was an agent, but because they come within the class of excepted hearsay evidence which fulfills the requirements of the *res gestae* rule; the declarations of one not an agent would be received under the same conditions. The declarations of an agent made within the course of his employment, and while the matter in controversy was pending, are admitted, not because they were made as part of the *res gestae,* but because they were made under circumstances stated. They would be received weeks or months after the episode inquired into, provided that they were made under those circumstances. They may utterly fail of complying with the rule of *res gestae,* and still be admissible upon the entirely different foundation. It is misleading and incorrect, manifestly, to hold that, before the declarations of an agent can be received, they must be shown to have been both a part of the *res gastae* and within the course of his employment. They may have been either or both, and admissible for that reason.

Mr. Tiffany, in his work on Agency (2d Ed.) § 106, makes the matter as clear as sunlight. He concludes thus: "On the one hand, declarations made at the time of the act by the parties participating therein and part of the *res gestae* —that is, of the surrounding circumstances—are admissible, irrespective of whether the participants are servants of the

person sought to be held responsible for the act, and by whomsoever made. On the other hand, the statement of a servant or agent is admissible as an admission, if it is made when he is engaged in some authorized transaction, and it is within the scope of his authority in that transaction to make the statement. To illustrate: In an action against a railway company, by a person injured by a collision, the declaration of the engineer, referring directly to and characterizing or explaining the occurrence, made at the time or immediately afterwards, under its immediate influence, may, under the circumstances of the case, be held part of the *res gestae,* and admissible against the company upon that ground. It might be, however, that some subsequent statement of the engineer as to the cause of the accident, although not part of the *res gestae,* would be evidence against the company as an admission, as for example, if it happened to be made by him in the course of his duty in making a report of the accident to a superior officer. In the one case the declaration of the engineer is admissible as a circumstantial fact, as part of the *res gestae,* because it is the spontaneous utterance of a participant in the event. In the other case his statement is admissible against the company as an admission, because it is made at a time and under circumstances when the engineer has authority to make it. If the statement is not admissible, either as a declaration forming part of the *res gestae,* or as an admission, it cannot be received."

The declarations of Hamilton could not have been received, therefore, unless it had been shown that they were either *a part of the res gestae,* or were made by him, as an agent of the defendant, while actually engaged in the business of his agency. It is possible that they may have been made under both conditions; but it is clear that, if they were not made under either, evidence of them should not have been received.

First, *were they a part of the res gestae,* as probably held by the presiding Judge, contended for by counsel for re-

spondent, and distinctly held in the leading opinion of the Chief Justice?

It will be observed that the declarations did not purport to narrate a single circumstance connected with the collision; but were intended to establish the relation which existed between the driver of the car and the defendant, a matter which necessarily pre-existed the occasion of the collision.

My understanding of the law is that the declarations sought to be admitted must relate to the immediate circumstances of the transaction under review, as tending to describe, elucidate, or explain its character.

In 10 R. C. L., 977, it is said: "To bring acts and declarations within the doctrine of *res gestae* they must be connected with and grow out of the act or transaction which is the subject-matter of inquiry so as to form one continuous transaction, and must in some way illustrate, elucidate, qualify, or characterize the act, and in a legal sense be a part of it."

And at page 982: "*Res gestae* include all those facts and circumstances which are incidents of a particular litigated act, and which are illustrative of such act and in contemplation of law are part of the act itself."

In *State v. Belcher,* 13 S. C., 463 (quoted with approval in *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661, and indirectly in *Nelson v. R. Co.,* 68 S. C., 462, 47 S. E., 722), the Court said: "Where the inquiry is as to a certain transaction not only what was done, but also what was said by those present during the transaction, is admissible for the purpose of explaining its character  *  *  *  To make declarations a part of the *res gestae,* they must be contemporaneous with the main fact, not, however, precisely concurrent in point of time. If they spring out of the transaction, elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as sontemporaneous."

"Where the declarations (of a party) do not explain, illustrate or characterize a fact, but are offered merely to establish the existence of the fact, or to strengthen other proof of the existence * * * they are not admissible in evidence as part of the *res gestae.*" *Corder v. Talbott,* 14 W. Va., 277.

In *Ellis v. R. Co.,* 132 Va., 24, 110 S. E., 382 it was held that a declaration admissible under the *res gestae* rule must have been an undersigned or illustrative incident or part of the litigated act.

In *Pinney v. Jones,* 64 Conn., 545, 30 A., 762, 42 Am. St. Rep., 209, it was held, quoting syllabus: "*Res gestae* are the circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character."

In *Bush v. Roberts,* 111 N. Y., 278, 18 N. E., 732, 7 Am. St. Rep., 741, it was held, quoting syllabus: "In order that the declarations of a party may be admissible in evidence as part of a transaction, they must grow out of the principal fact or transaction, illustrate its character, be contemporaneous with it, and derive some degree of credit from it."

In *Hermes v. Ry. Co.,* 80 Wis., 590, 50 N. W., 584, 27 Am. St. Rep., 69, it was held, quoting syllabus: "*Res gestae* mean the circumstances, facts, and declarations which grow out of the main fact, contemporaneous with it, and serve to illustrate its character."

In *Redmon v. Met. St. Ry. Co.,* 185 Mo., 1, 84 S. W., 26, 105 Am. St. Rep., 558, it was held, quoting syllabus: "*Res gestae* are those circumstances which are the automatic and undisguised incidents of a particular litigated act, and which are admissible when illustrative of such act, and which in contemplation of law are a part of the act itself."

In *Leach v. R. Co.,* 29 Utah, 285, 81 P., 90, 110 Am. St. Rep., 708, it was held, quoting syllabus: "Declarations and acts sought to be introduced in evidence as part of the *res*

*gestae* must be connected with or grow out of the main transaction which is the subject matter of litigation, and must tend to explain and elucidate it."

In *Butler v. R. Co.,* 143 N. Y., 417, 38 N. E., 454, 456, 26 L. R. A., 46, 42 Am. St. Rep., 738, the Court said: "While proximity in point of time with the act causing the injury is in every case of this kind essential to make what was said by a third person competent evidence against another as part of the *res gestae,* that alone is insufficient, unless what was said may be considered part of the principal fact, and so a part of the act itself. But as in this case the act was complete before the remark of the brakeman was made, although closely connected with it in point of time, and was not one naturally accompanying the act, or calculated to unfold its character or quality, it was not admissible as *res gestae.* It was as independent of the principal fact, and as incompetent as evidence, as though the act and the remark had been made further seperated in point of time. 'Res gestae,' in a case like this, implies substantial coincidence in time; but, if declarations of third persons are not in their nature a part of the fact, they are not admissible in evidence, however closely related in point of time."

The case of *Renfro v. Central Coal & Coke Co.* (Mo. Sup.), 19 S. W. (2d), 766, 770, is precisely in point. There a child was run over by a coal truck driven by a man named Brown; shortly after the accident and while the child was being removed to a car, a policeman came up; he questioned the driver who was standing in front of the truck; the driver told the policeman that he was working for the (defendant) and could be found at the yards any time that he was needed; the testimony was objected to by the defendant. The Court, in reversing the judgment, said: "This statement can in no sense be regarded as *res gestae.* It was not a spontaneous utterance made at the time of the incident involved, explaining or throwing light upon it. It did not refer to the accident at all, but to matters entirely discon-

nected with it. * * * It is offered solely as evidence of the existence of the agency itself. It was not competent for this purpose." (Citing authorities).

The case of *Hackney v. Dudley,* 216 Ala., 400, 113 So., 401, 403, is equally pertinent. The facts and ruling sufficiently appear from the following extract from the opinion: "The trial Court erred in permitting witnesses for plaintiff to testify that Hambright said just after the collision that he and his son were working for defendant. This was objectionable because it was no part of the *res gestae* of the collision, but was independent hearsay merely. An agent's declarations, of any sort, are not competent evidence against his principal unless made in the prosecution of the principals' business, within the scope of the agent's authority, and with reference to and explanatory of the act or transaction in question"—citing cases.

In the case of *McAvon v. Brightmoor Co.,* 245 Mich., 44, 222 N. W., 126, 127, the same conclusion was reached, as appears from the following extract from the opinion:

"Jack W. Wilson, a witness produced by plaintiff, stated that after the accident, and while the driver of the truck was still in his seat, he spoke to him, and he was then asked 'whether or not anything was said in reference to the owner of the truck.' On objection he was not permitted to state the answer made by the driver. Error is assigned on this ruling.

"Where a personal injury results from a collision, as in this case, one of the facts to be determined on which liability may be predicated is, What caused the collision? Statements made by those present, incidental thereto, and explanatory thereof, termed the *res gestae,* are admissible although in fact hearsay. But, as was said in *Rogers v. Saginaw-Bay City R. Co.,* 187 Mich., 490, 494, 153 N. W., 784, 785:

" 'It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling

enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence, § 1750 et seq.'

"The statements made in such cases must be voluntary and the spontaneous outgrowth of the occurrence, *Bernard v. Grand Rapids Paper Box Co.,* 170 Mich., 238, 136 N. W., 374, 42 L. R. A. (N. S.), 930, and, as said in the *Rogers case,* 'must relate to the circumstances of the occurrence preceding it.' The rule thus stated was quoted with approval in the more recent case of *Stone v. Sinclair Refining Co.,* 225 Mich., 344, 350, 196 N. W., 339, 341. The answer of the driver, if responsive to the question asked by Wilson, would in no way have related to the cause of the collision, and would not have been a part of the *res gestae.*"

The cases from this Court are entirely in harmony with the proposition that the declaration claimed to constitute a part of the *res gestae* must have referred directly to the transaction under consideration, tending to throw light upon the circumstances under which it arose. *State v. Arnold,* 47 S. C., 9, 24 S. E., 926, 58 Am. St. Rep., 867; *Gosa v. R. Co.,* 67 S. C., 347, 45 S. E., 810; *Nelson v. R. Co.,* 68 S. C., 462, 47 S. E., 722; *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661; *Puryear v. Ould,* 81 S. C., 456, 62 S. E., 863; *Young v. R. Co.,* 75 S. C., 190, 55 S. E., 225; *Maybank v. Rogers,* 101 S. C., 450, 86 S. E., 2; *Kitchens v. Melton,* 103 S. C., 270 87 S. E., 1006; *State v. McKinney,* 104 S. C., 358, 89 S. E., 353; *Templeton v. R. Co.,* 117 S. C., 44, 108 S. E., 363.

While I think that there can be no question as to the soundness of the foregoing principles, there is a phase of the subject which should not escape attention. It is thus expressed in 2 C. J., 939: "While the declarations of an alleged

agent are of themselves incompetent to prove agency, if the agency is otherwise *prima facie* proved, they become admissible in corroboration, where they constitute a part of the *res gestae* and were made at the time of the transaction in question. Thus, where the agency has been established by independent evidence, the declarations of the agent are competent to show that he acted as agent and not on his individual account, or to show the nature and extent of his authority."

Our own case of *Bass v. American Export Corp.*, 124 S. C., 346, 117 S. E., 594, 595, 30 A. L. R., 168, illustrates the principle. There it was held: "While agency may not be established by the declarations and conduct of the alleged agent *alone,* such declarations and conduct may be admissible as circumstances in connection *with other evidence tending to establish agency."*

But in the present case there is no such evidence; the sole reliance of the plaintiff to establish the agency of Hamilton is the statement that he made.

This, however, is aside from the admissibility of the evidence as part of the *res gestae;* if there had been other evidence of agency, the declarations would have been admissible regardless of the question of *res gestae.*

This brings me to the other question in the case: *Is there any evidence outside of the declarations tending to show that Hamilton was, in the circumstances of the collision, acting as an agent of the defendant?*

Assuming that, upon a submission of the issue of ownership of the Buick car, the jury would have been justified, as I think they would, in finding that issue in favor of the plaintiff, absolutely the only evidence which could form the basis, even of an argument that Hamilton was the agent of the defendant, is the fact that he was driving a car that belonged to the defendant; in other words, that a presumption arose that Hamilton was an agent of the defendant and engaged about its business at the time of the collision;

a presumption that would have been as legitimate if a thief had stolen the car.

It has been suggested that the case of *Burbage v. Curry,* 127 S. C., 349, 121 S. E., 267, 268, sustains such a presumption. I do not think so. There it was held: "When one is found in possession of property of another, *using it in the service of such other,* he is presumed to be the servant of the owner. This presumption follows through the entire case and requires rebuttal evidence on the part of the owner (*McLeod v. R. Co.,* 93 S. C., 71, 76 S. E., 19, 705), and the issue is one for the jury subject to the rule laid down in the case just cited."

The *Burbage case,* the *Keen case,* the *Osteen case,* 102 S. C., 146, 86 S. E., 202, L. R. A., 1916-B, 629, the *Williamson case,* 140 S. C., 376, 138 S. E., 831, all recognize the patent principle that the presumption does not attach unless the person in possession was at the time, using the vehicle *in the service of the owner.*

In the *Osteen case,* cited in the opinion of the Chief Justice, it was held (syllabus) : "One who is in possession of property of the owner, *and who uses it in the service of the owner,* is presumptively a servant of the owner."

In the *Keen case,* 124 S. C., 342, 117 S. E., 531, the foregoing quotation from the *Osteen case* was approved, and so in the *Williamson case.*

The declarations as part of the *res gestae* being eliminated, and there being no evidence tending to show that Hamilton was at the time *using the car in the service of the defendant,* the relied upon presumption of agency fading from the case, there remains not a vestige of evidence tending to show the fact at issue.

But assuming for the moment that there is *some* evidence tending to support the presumption, the uncontradicted evidence on behalf of the defendant explaining the circumstances of Hamilton's engagement effectually removes the presumption under the rule declared in the *Burbage case:*

"This presumption follows through the entire case and requires rebuttal evidence on the part of the owner (*McLeod v. R. Co.,* 93 S. C., 71, 76 S. E., 19, 20, 705), and the issue is one for the jury subject to the rule laid down in the case just cited (the *McLeod case*)."

The rule there stated is as follows: "The general rule is not, however, always applicable; for the evidence offered by the defendant may explain so clearly the act on which the presumption of negligence rests, and show due care so plainly and indisputably, that the presumption originally created would be completely destroyed. When no reasonable man could fail to come to the conclusion that the presumption had been so destroyed, and there is no other evidence of negligence, then it would not only be within the power of the Court, but its duty, to order a nonsuit or direct a verdict for the defendant."

Reviewing the evidence, then to ascertain whether the presumption, if it ever existed, has been removed, it appears that the Buick car had been owned until a short time before the accident by Mrs. Ely, wife of the president and general manager of the defendant company; she had traded it to the defendant for a Ford sedan; the delivery of the Ford car was delayed and Mrs. Ely was permitted to use the Buick car until delivery could be made; at the time of the accident Mrs. Ely was absent from the city, and during her absence her sister, Mrs. Mencken, who lived with her, was allowed to make use of the car. The driver Lee Hamilton was employed *as a butler and chauffeur* at the home of Mr. and Mrs. Ely, and had been so employed for several years; *he had never worked for the defendant company,* but was the personal household servant of the Elys; about 2:30 p. m. of the day of the collision, Mrs. Mencken directed Hamilton to drive her in the car to the Gloria theatre, park the car and wait for her until the show was over; Hamilton without permission of any one concluded to occupy the car and the intervening time upon a personal mission of his own; he drove the car

to a place about seven miles away to collect a debt due him personally; he failed to find his man, and was told that he had gone to Summerville, whither Hamilton pursued his search; he did not find him there; and on his return to the city the collision occurred.

It appears to me that it would be impossible to reach any other conclusion from this evidence than that any possible presumption from the possession and operation of the car by Hamilton, as the agent of the defendant and about its business, had been completely dissipated. As the Court further said in the *McLeod case:* "It is true that circumstances or other direct evidence may so support the testimony of an employee that no other than a conclusion favorable to him on these points could be reasonably reached; and in such a case it would be the duty of the Court to announce the conclusion of law that the presumption of negligence from the killing of live stock had been completely rebutted, and that the plaintiff could not recover."

It is declared in the leading opinion that the defendant has waived objection to the testimony giving the declarations of Hamilton by not moving for a nonsuit and by offering testimony in contradiction of the witnesses who testified to the declarations. If the testimony was admissible, as the presiding Judge held, it was admissible upon the issue of Hamilton's agency; as long as it was in the case, the defendant did not have the slightest chance to prevail in a motion for a nonsuit. After it was received, the defendant had the unquestionable right to offer testimony in rebuttal; the jury may have believed the rebuttal testimony, in which event the admission would have worked no harm; it had the right to take that chance, however remote it may have appeared and as the result shows.

For these reasons, I am convinced that the defendant's motion for a directed verdict in its favor should have been granted.

### ORDER ON PETITION FOR REHEARING

Per Curiam.

. Petition dismissed.

MR. JUSTICE COTHRAN (dissenting) : The defendant has submitted a petition for a rehearing of this appeal, and, being satisfied that it should be granted, I shall make some observations additional to the dissenting opinion which I have filed.

There are two main issues in the appeal: (1) Whether the declaration of the chauffeur Hamilton, that he was employed by the defendant, was admissible as a part of the *res gestae;* (2) Whether there is any evidence tending to show that at the time of the collision he was engaged in the business of the defendant.

I. I concede that the *circumstances* under which the alleged declaration was made would have justified the admission of testimony of such declaration, *provided that the declaration was of the nature requisite to constitute it a part of the res gestae.* The *circumstances* may have been entirely sufficient, and the *nature* of the declaration entirely insufficient, as I shall endeavor to show.

In 1 Greenl. Ev. (13th Ed.), 130, it is said: "The principal points of attention were whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, *and* whether they were so connected with it *as to illustrate its character."*

In 22 C. J., 458, it is said: "Statements or circumstances which are explanatory of the main fact are admissible in evidence as part of the *res gestae.* Indeed *this explanatory nature is essential,* for a substantial coincidence in point of time with the principal fact, is not sufficient to render a declaration or accompanying fact admissible as part of the *res gestae;* it must possess the further characteristic of being well calculated to unfold the nature and quality of the main

fact, and so harmonize with it as· obviously to constitute a single transaction."

In *Turpin v. Brannon,* 3 McCord, 261, the Court said: "But the declarations of a party when accompanied by an act, may be received *as explanatory of that act,* as constituting a part of the *res gestae."*

In *Oliver v. R. Co.,* 65 S. C., 1, 43 S. E., 307, 314, the Court said: "It was testimony of an unpremeditated and contemporaneous substantive act of the witness *that tended to throw light* upon the actual condition as seen by him."

In *Cain v. R. Co.,* 74 S. C., 89, 54 S. E., 244, the act of negligence alleged was the excessive speed of the train; a witness was allowed to give the declaration of the conductor to the effect that the engineer was running the train too fast; that he must see about it, manifestly upon the ground that it threw light upon the situation.

In *Glover v. Tel. Co.,* 78 S. C., 502, 59 S. E., 526, 528, the Court said: "The testimony was admissible not to show the contents of a telegram by the declarations of the messenger boy, but because the declaration accompanied the act of delivery to Royal, *and tended to explain it."*

In *Puryear v. Ould,* 81 S. C., 456, 62 S. E., 863, 865, the Court said: "Declarations accompanying an act *and explanatory thereof* are admissible as part of the *res gestae."*

In *Benbow v. Harvin,* 92 S. C., 180, 75 S. E., 414, 417, the Court said: "The declarations of the trustees and their instructions to the surveyor at the time of the first division were admissible as part of the *res gestae. They were explanatory of their acts."*

If, as seems to be the law, the declaration to be considered as a part of the *res gestae* must, in addition to the element of contemporaneous, actual or practical, be calculated to explain the transaction under investigation, it appears impossible to conclude that the declaration of Hamilton that he wes employed by the defendant had the remotest tendency to explain the circumstances of the collision.

Reliance is placed upon the cases of *Shelton v. R. Co.,* 86 S. C., 98, 67 S. E., 899, and *Snipes v. Augusta-Aiken R. & Electric Corp.,* 151 S. C., 391, 149 S. E., 111, to sustain the admissiblity of the testimony of the declaration of Hamilton as part of the *res gestae.* I will discuss these cases:

*Shelton v. R. Co.:* In this case the question dealt with was the time which had elapsed between the accident and the declaration of the engineer, and not the nature or character of the declaration; that is to say, it dealt with the circumstances under which the declaration was made, and not to the essential nature of it which unquestionably tended to explain the catastrophe. As to the circumstances, it was properly held that no hard and fast rule can be formulated, but much must be left to the discretion of the trial Judge, but I do not understand that it was intended to change the universal rule, that before a declaration can be held, as a matter of law, to be a part of the *res gestae, it must tend to elucidate the transaction under review.*

*Snipes v. Augusta-Aiken R. & Electric Corp.:* In that case it was distinctly and explicitly ruled that the declarations of the agent were admitted upon the ground that he was still acting as such, *and not that they were a part of the res gestae.* (It is a matter of small consequence, but I do not find in my dissenting opinion the statement attributed to me in the leading opinion.)

II. I do not think that there is a particle of evidence in the case *tending* even to show either that Hamilton was an employee of the defendant company, or if it should be considered that there is, that he was engaged at the time of the collision, or at any other time, in the business of the corporation. As a matter of fact the uncontradicted evidence is all one way, that he was a household servant of the president of the corporation, for a little while engaged in the business of conducting a lady member of his family to a picture show, and, after leaving her there, embarking upon an unauthorized, personal mission of his own. Under these cir-

cumstances the trial Judge would have been authorized to so charge the jury, *Uzzell v. Horn*, 71 S. C., 426, 51 S. E., 253; *Spencer Nat. Bank v. Inman Mills*, 74 S. C., 76, 53 S. E., 951; *Slaughter Co. v. Lumber Co.*, 79 S. C., 338, 60 S. E., 705; *Herndon v. R. Co.*, 118 S. C., 466, 111 S. E., 13.

While it is true that Pettit is president of the corporation and it may be assumed that he is largely interested in it, it does not appear but that others as well as he are interested as stockholders, and, if Hamilton was not an employee of the corporation, they will be unjustly charged with the damages recovered. At any rate Pettit and the corporation are distinct legal entities and are entitled to the legal conclusions flowing from that fact.

I do not think it at all fair to Pettit to insinuate that he is attempting to shift the employment of Hamilton from the corporation to himself, in order to shield the corporation, or that there is the slightest foundation for the suggestion. In fact it would naturally be to his interest, if there be liability at all, that it should fall upon the corporation and not upon himself.

It was not at all necessary to resort to any shifting; whether the action had been against the corporation or against him, there could not possibly have been any liability upon either under the circumstances.

Hamilton's conduct was as much like the race to which he belongs as anything could possibly be, unless it had been to go to sleep in the car while he was waiting for the show to be over; and why any one other than he should be held in heavy damages I am utterly unable to comprehend.

The only possible, tenuous thread upon which the plaintiff could rely to establish the agency of Hamilton is that he was at the time of the collision driving a car that belonged to the defendant company. From that fact it is sought to be inferred, not only that Hamilton was an employee of the corporation, but that he was engaged at the time in the

business of the corporation; mounting a presumption upon a presumption.

The authorities cited in my dissenting opinion conclusively show that the presumption that the driver of a car that belonged to another was an agent of such other is justifiable only when it is shown that the driver *was using the car in the service of such other*. If the doctrine declared is to prevail, a thief, driving the owner's car away from the scene of his theft, is presumed to be not only the agent of the owner, but engaged in the business of the owner.

It occurs to me that the case is controlled by that of *Knight v. Motor Car Co.*, 108 S. C., 179, 93 S. E., 869, 871, L. R. A., 1918-B, 151. That case is stronger for the plaintiff than the case at bar, in that Boyd, who was driving the car of the motor company, was admittedly an employee of that company, but at the time upon a personal mission of pleasure, without the knowledge or consent of the company. In reversing a judgment for the plaintiff, the Court said: "The only facts which connect the motor company with the transaction are these: Boyd was in that period, but not at that instant, the servant of the motor company, and he was using the car of the motor company."