## YOUNG v. SEABOARD AIR LINE RY.

1. MASTER AND SERVANT—EVIDENCE.—Detailing conversation with section master before injury from defective cleaver in reference to its condition, and statement made by section master to employee that he had made requisition for new cleaver, is admissible to show defendant had notice of unsafe condition of cleaver. But if there were error in admitting such evidence it was not prejudicial, as the fact was not in dispute.

2. EVIDENCE—RES GESTAE.—Statement of section master as soon after accident to eye of employee as he got easy, "If they had sent me the cleaver I had made requisition for, there would not have been anything of this matter," made about fifty steps from accident, is part of *res gestae.*

3. MASTER AND SERVANT.—EVIDENCE that plaintiff was discharged from employ of defendant because he would not sign a release of his claim for damages for the injury in question, under the ruling of the Judge could not have been considered by the jury as an element of damages, unless plaintiff was discharged because of the injury.

   MR. JUSTICE WOODS *thinks this evidence was highly prejudicial to defendant, and that on this ground the judgment should be reversed.*

Before KLUGH, J., Union, September Term, 1905. Affirmed.

Action by M. V. Young against Seaboard Air Line Ry. From judgment for plaintiff, defendant appealed on following exceptions:

"I. Because his Honor erred in permitting the witness, Moore Young, to testify that he and several others had complained to the section master about the condition of the cleaver or cleavers. This was erroneous, because it permitted a witness to testify, in so far as it referred to his own complaints, to transactions or conversations between himself and the section master, in which neither the plaintiff nor defendant were in any way interested or involved at the time, and which transactions or conversations were not relevant to the issues made in this case. It was not the proper and competent way to prove the condition of the cleavers, it being evident that there might have been complaints, no matter

what the condition of the cleavers was. The condition of the cleavers could not be lawfully ascertained by proving complaints from the section hands. It was further incompetent because, in so far as the witness testified as to the declarations and complaints of others, he was permitted to testify as to declarations and statements made by others, the fellow-servants of the plaintiff and himself, which statements could be nothing more nor less than hearsay. The complaints of the witness and his fellow-servants to the section master were really nothing more than declarations giving their opinions as to what was needed by them for their work.

"II. Because his Honor permitted the plaintiff's counsel to ask the witness, Moore Young, the question, whether or not the section master had made requisition for new cleavers. The error consisted in allowing the witness to state a fact which he could not possibly know, and did not claim to know of his own knowledge, but must have known, if at all, from the statement of the section master, which would be, of course, nothing more than hearsay. Even if requisition had been made for new cleavers, it was not proper to permit the witness to testify as to this in order to show the condition of the cleavers at the time of the accident.

"III. Because his Honor erred in ruling that the witness, Jeff Shelton, could answer the question asked by plaintiff's counsel, whether or not he, or any of the section hands, had made complaint to the section master about the condition of the cleavers. This was erroneous, because it permitted the witness to state a transaction or conversation between himself and the other section hands with the section master, which was certainly not relevant to the matters in issue, and was not the proper way to prove the condition of the cleavers. If this testimony was not competent to prove the condition of the cleavers, it was not otherwise relevant to the issues raised by the pleadings.

"IV. Because his Honor erred in permitting the witness, Walter Jeter, to answer the question asked by plaintiff's counsel, as follows: 'Q. Did you make any complaint about

the condition of these cleavers? A. Yes, sir.' It was error to permit the witness to testify as to the fact that he had made complaint about the condition of the cleavers, the time as to the complaint not being stated, and the fact that this witness had made complaints about the condition of the cleavers not being relevant to the issues involved in the case. this testimony at best could only tend to prove the section master's knowledge of the condition of the cleavers, which fact, from the testimony, was well known to him without information from the section hands.

"V. Because his Honor erred in permitting the witness, Jeff Shelton, to testify that the section master said, after the accident, 'If they had sent me the new cleaver I had made reposition (requisition) for, that it would not have happened.' From all of the testimony of all the witnesses, considered together, it was clearly shown that the section master was not present when the accident occurred, but was some thirty or forty yards away at the river bridge, did not see the accident, and evidently did not know how it happened, except from hearsay, and did not return until some minutes after the accident, and could not have made this remark until after Mr. Young had gotten somewhat easy, which, according to the testimony of the witnesses, was twenty or twenty-five minutes after the accident. These declarations of the section master could not possibly be a part of the *res gestae,* could not be competent as an admission to bind the company, and from all of the circumstances, was nothing but an expression of opinion as to the cause of the injuries, and this opinion, based upon the statements of the eye-witnesses as to how it occurred. By permitting this witness to thus testify, the Court, in effect, permitted a witness to testify as to what another party had said not under oath, and which, under all the facts, was clearly nothing but hearsay and an expression of opinion.

"VI. Because his Honor erred in permitting the plaintiff to testify that the section master told him, after the accident, and after plaintiff had gotten easy and quiet, that, 'If they

had sent me the cleaver I had sent in requisition for, there would not have been anything of this matter'—that is, of plaintiff's eye getting hurt. It was error to permit this witness to testify as to this statement or declaration of the section master, which happened too long after the accident to be a part of the *res gestae*, being twenty or twenty-five minutes afterwards, and which was in no way an explanatory exclamation. It was not a part of the *res gestae,* and was not an admission against interest, but was merely an expression of opinion based upon statements made to the section master by those who were present.

"VII. Because his Honor erred in permitting plaintiff to testify, over the objection of the defendant, that after he returned to work for the defendant, he was fired (discharged) by the company because he would not sign a release paper—that is, a release for any claim he might have for damages to his eye. The error consisted in permitting the witness to testify as to a transaction between him and the employees or agents of the defendant several weeks or months after his injury, which transaction had nothing to do with explaining to the jury how the accident occurred, or in fixing the liability for the same. This testimony of the plaintiff as to his discharge by the company because he would not sign a release was irrelevant to the issue, and was very prejudicial to the defendant, in that it was used to inflame the mind of the jury against the defendant. It was error to permit this testimony, there being no charge of vindictive, wilful or wanton conduct on the part of the defendant, in that it did not tend to throw any light upon the question whether or not the plaintiff was injured by the negligence of the defendant, that being the only issue submitted to the jury. Such evidence could be used, and was only used, for the purpose of improperly influencing the jury against the defendant, was not responsive to any issue properly raised by the pleadings, there being no charge of wilfulness, wantonness, recklessness, or general misconduct towards the plaintiff by the defendant.

13—75

"VIII. Because his Honor erred in permitting the plaintiff to testify that he suffered mental anguish, in that he was apprehensive that he might lose the sight of his eye, his Honor holding that plaintiff could recover for such apprehensions on the part of the plaintiff. It was error on the part of his Honor to hold that apprehensions on the part of the plaintiff as to what might happen was a proper ground for recovery in an action of this kind. The plaintiff, in an action of this kind, can only recover his actual damages for lost time, expenses, and actual physical pain and mental anguish suffered on account of existing circumstances, but he cannot recover on account of apprehensions which he might have had as to what *might* possibly happen on account of existing conditions.

"IX. Because his Honor erred in overruling the motion of the defendant upon the minutes of the Court for a new trial.

"(1.) In overruling this motion for a new trial, his Honor erroneously held that it was competent for the plaintiff to prove that he had been discharged by some employee of the company some weeks or months after the accident, when he had returned to work, because he, the plaintiff, would not sign a release for any claim he might have against the company on account of his injuries. His Honor held that this was not strictly in the case, but that it might come in to show the general relation between the parties. This was erroneous, for the only question to be decided in the case was, whether or not the plaintiff was injured by the negligence of the defendant in not furnishing him with safe tools with which to work. The fact that he was afterwards discharged, could not throw any light upon that question. This testimony could only be used, and was only used, to excite sympathy for the plaintiff, to inflame the mind of the jury against the defendant by arguing to them that the defendant had injured the plaintiff by its negligence, and had then discharged him when he returned to his work because he would not sign the release. The defendant had no notice that any

such testimony would be introduced, and could not have anticipated that such would be admitted or permitted, and therefore, could not be in position to contradict the same. His Honor should have held that a grave injustice had thus been done the defendant upon the trial of the case, under all of the circumstances, and should, upon this ground, have granted the defendant's motion for a new trial. There was no allegation in the complaint that the defendant had in any way mistreated or damaged the plaintiff after the accident in which the plaintiff's eye was injured.

"(2.) His Honor erred in concluding and stating in his order overruling the motion for a new trial, that the section master made more than one statement as to how, in his opinion, this accident occurred. One of the witnesses was asked the question, what the section master said immediately after the accident; but the section master, by all of the testimony, was not present, and could not have made any statement immediately after the accident occurred. The witness, in his reply, did not say that the statement was made immediately after. From the testimony of all the witnesses, it was evident that the section master made only one statement as to this matter, which, as his Honor himself says. in his order, was erroneously admitted in evidence. His Honor erred in holding that one of the statements of the section master, he erroneously finding that there were two, was part of the *res gestae;* for it was not possible for this declaration to have been made so shortly after the accident as to be a part of the *res gestae,* and it was not an exclamatory explanation on the part of one taking part in the transaction. His Honor erred in holding that his erroneously permitting this testimony to go to the jury was harmless error. The former testimony showed complaints by the section hands, but this declaration or statement of the section master, after the accident, is the only testimony tending to show that the section master thought the cleavers were not in good condition. The section master not being present at the trial of the case, it was error to permit witnesses to testify as to these

declarations by the section master.    His Honor should have, in view of these facts, granted the motion for a new trial."

*Mr. J. L. Glenn,* for appellant, cites: *Declarations and statements of employees after accident are not admissible:* 1 Elliott on Ev., 378; 21 Ency., 106; 119 U. S., 99; 1 Green Par., 113; 20 Wall., 540; 119 U. S., 551; 144 Mass., 148; 9 Gray, 245; 17 N. Y., 131; 26 Ga., 113; 92 Va., 327; 57 Ill., 265; 19 L. R. A., 373; 1 Ency. Ev., 552; 27 S. C., 63; 19 S. C., 373; 53 S. C., 448; 68 S. C., 462, 304. *Evidence that plaintiff was discharged because he would not release defendant for injury not admissible under issues:* 1 Elliott on Ev., 328, 198.

*Messrs. Wallace & Barron,* contra, cite: *Evidence as to mental anguish properly admitted:* 60 S. C., 9; 46 S. C., 104; 52 S. C., 333; 57 S. C., 330; *Jennings* v. *Mfg. Co.,* 72 S. C.; 12 Ind. App., 421; 67 S. C., 312; 1 Strob., 125; 8 Ency., 658. *Statement of section master part of res gestae:* 68 S. C., 310, 462; 47 S. C., 12; 31 Am. & Eng. R. R. Cas., 399; 50 N. W. R., 584; 21 Ency., 1 ed., 110; 28 S. C., 158.

September 17, 1906.    The opinion of the Court was delivered by.

Mr. Justice Gary.    This is an action for damages, alleged to have been sustained by the plaintiff through the wrongful act of the defendant, in failing to furnish safe appliances.    The allegations of the complaint (except the formal portions thereof) are substantially as follows:

That on the 17th of June, 1903, the plaintiff was employed by the defendant as a laborer, in repairing a section of its track; that in discharging the duties of his employment, under the direction of the section master, it became necessary for him to take hold of a spike-bar, for the purpose of bracing a steel rail, that was being cut; that while holding the spike-bar, another employee was holding the cleaver, with which the rail was being cut, by a third employee striking

the same with a sledge hammer; that when the cleaver was being struck by the driving sledge a piece of said cleaver flew off, and struck the plaintiff in the eye, causing him permanent injury; that the injury resulted from the negligence of the defendant, in not supplying a safe and suitable cleaver, for use by its employees in cutting said rail; that the cleaver furnished for cutting that particular rail was utterly unfit and unsafe for that purpose, within the full knowledge of the defendant and its representative, or the defendant could and should have known the fact, and that the plaintiff did not have knowledge of such fact nor was he warned of the danger.    The jury rendered a verdict in favor of the plaintiff for $2,500.

The defendant made a motion for a new trial, which was refused, whereupon it appealed upon exceptions, which will be set out in the report of the case.    The first four exceptions raise the question, whether his Honor, the presiding Judge, erred in permitting the witnesses to testify as to conversations which they had with the section master, prior to the injury, in reference to the unsuitable condition of the cleavers, including a statement made to them by the section master, that he had made a requisition for new cleavers.    The only object of this testimony was to show that the defendant had notice of the unsafe condition of the cleavers.    This fact was not in dispute, as will appear by the following statement set out in the fourth exception, to wit: "This testimony at best, could only tend to prove the section master's knowledge of the condition of the cleavers, which fact from the testimony was well known to him, without information from the section hands."    The testimony was admissible, for the purpose of showing knowledge of the unsafe condition of the cleavers on the part of the defendant.    But even if there was error in admitting such testimony, it was not prejudicial, as the fact was not in dispute.

The fifth and sixth exceptions present the question whether the statement of the section master: "If they had

sent me the cleaver I had sent in requisition for, there would not have been anything of this matter;" was admissible as part of the *res gestae*. The witnesses testified that the section master was about fifty steps, thirty or forty or 100 yards distant from the plaintiff, when he was injured.

The record discloses the following, while the witness Jeter was on the stand:

"You started to say something that. Mr. Reynolds said, when the accident happened—when Mr. Young was hurt. What was it that he said at the time Mr. Young was hurt? Mr. Glenn: Witness didn't say anything. I object to his going on and stating what Mr. Reynolds said. Mr. Barron: I think we can prove it was an admission, and I think it is clearly competent under the doctrine of *res gestae*. '(Objection overruled.) Q. State whether or not Mr. Reynolds made any admission immediately after this accident? Mr. Glenn: Your Honor understands that I am still objecting to this. Court: Yes, sir. Witness: Well, he said, 'If they had sent me the new cleaver I made requisition for, that would not have happened.' "

The plaintiff also testified as follows: "Q. State whether or not, after that piece struck you in the eye, Mr. Reynolds made any admission as to the condition of the cleaver? Mr. Glenn: We object. Court: Same ruling. Q. Did he make any admission? A. He told me after I got quiet and was easy; he said, 'If they had sent me the cleaver I had sent in requisition for, we would not have had anything of this matter.' "

As said by his Honor, the presiding Judge, the object of this testimony was to show the bad condition of the cleaver, and the knowledge of that fact by the defendant, through its agent, which fact was not in dispute. Therefore, the testimony was not prejudicial to the appellant. But in any event it was a part of the *res gestae*. *Gosa* v. *Ry.*, 67 S. C., 347, 45 S. E., 810; *State* v. *McDaniel*, 68 S. C.,

304, 47 S. E., 384; *Nelson* v. *Ry.*, 68 S. C., 462, 47 S. E., 722.

The seventh exception assigns error on the part of the presiding Judge in ruling that testimony to the effect that the defendant forced the plaintiff to leave its employment, because he would not sign a release of his claim for said injury was admissible. The reasons assigned by the presiding Judge for said ruling were as follows: "The fact of their having discharged him would have no bearing on the question of damages, unless they had discharged him because of this injury. I think it is proper to the railroad as well as to the plaintiff, that he state that he lost the position on the road, and show that it was not as a result of this injury rendering him inefficient, but for some other reason. I don't know that it is strictly in place in the case, but it has come in and I will allow the question."

Under the ruling of the presiding Judge, the jury did not have the right to consider this fact as an element of damages, unless the plaintiff was discharged because of the injury, and it is not contended that the jury disregarded said instruction. We, therefore, fail to discover any prejudicial error.

The eighth exception was abandoned.

The ninth exception relates to a motion for a new trial upon grounds which have already been considered. One of the grounds for a new trial was based upon the ruling that the introduction in evidence of the declarations, set out in the fifth and sixth exceptions, was erroneous. In disposing of this ground the presiding Judge said: "Even if both declarations were incompetent, still those facts are amply established by the testimony of the witnesses, Moore Young, Jeff Shelton and Walter Jeter, as to the condition of the cleaver and the knowledge of the section master, and notice to him and to the defendant through him, by the complaints of those witnesses, and also by the fact that the section master had made requisition for new cleaver, all of which was fully testified to by these witnesses in chief. *Garrick* v. *R. R.*

53. S. C., 451." These reasons and those already assigned, show that the motion for a new trial was properly refused.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *dissenting*. I concur in the view that a new trial should not be granted for any error in the admission of evidence of statements made to others by the section master as to defects in the cleaver, for the reason that the defects and the probability that the injury to the plaintiff was due to them were abundantly proved by other evidence which was competent, and no evidence to the contrary was offered by the defendant.

The other objection to testimony is much more serious. The plaintiff was allowed to prove that after the accident he was again employed by the defendant railroad company, and then discharged because he refused to give the defendant a release from liability on account of this accident. The complaint contained no allegation on this subject, and hence the defendant had no notice it would be required to meet such a charge. Discharge for this cause standing before the jury as an unchallenged fact brought into the case an element of damage which the defendant was not sued for, and which it will hardly be denied would be regarded by any jury as an important factor in making up the estimate of damages suffered by the plaintiff at the hands of the defendant. New trials should rarely be granted for error in the admission of testimony, but I cannot bring myself to doubt that this clearly incompetent evidence was not highly prejudicial to the defendant. On this ground I think the judgment would be reversed.