14354

FUNDERBURK v. POWELL *ET AL.*

(187 S. E., 742)

414

Before Oxner, J., Kershaw, November, 1935.

*Messrs. John K. DeLoache* and *John D. Nock,* for appellants,

*Messrs. Henry Savage, Jr., Wittkowsky & Wittkowsky* and *Robinson & Robinson,* for respondent,

October 5, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This is an action to recover actual damages for injuries received in a collision between an automobile occupied by

the plaintiff and a train of the Seaboard Air Line Railway Company, which was stationary at the time of the collission. The railroad company is sued in the name of its receivers, but for convenience it will be referred to as the defendant. The case does not involve the violation of any statute or municipal ordinance, but is founded solely on common-law negligence.

The accident occurred on December 7, 1931, between 9 and 10 o'clock p. m., in the little town of McBee, at a highway-railroad crossing made by the tracks of the defendant railroad company and United States Highway No. 1. At the time of the accident the automobile was occupied by the plaintiff, who was twenty years old, and by two other persons.

The undisputed facts and circumstances leading up to the accident may be narrated as follows: Plaintiff resided at her home near Pageland with her sister, Miss Oletha Funderburk, and her parents. Miss Oletha Funderburk was a school teacher, and learning of a vacancy in a school near Hartsville, wished to obtain this position for the plaintiff. With this purpose in view, she rented or hired from her great-uncle, Tom Funderburk, a car which the testimony shows was a 1929 model A four-door sedan. The uncle insisted that his chauffeur, Tom Rollins, who had had eight years' experience as a driver, and who was familiar with the automobile, should manage and operate the same on the contemplated trip. The chauffeur called at the home of the plaintiff and her sister about 5 o'clock in the afternoon of December 7th for the purpose of taking the two young ladies to interview the principal of the school near Hartsville. They sat on the front seat with the driver, Miss Oletha Funderburk sitting in the middle, and the plaintiff at her right on the outside.

On this mission, they passed through the town of McBee, and proceeded several miles beyond, to the place where they had the interview, which was the object of the trip. On their return they reached McBee by a different route, on a

road paralleling the defendant's main line railroad track. Their way lay across the track, and the vehicle turned in to United States Highway No. 1, at right angles, at a point which is variously described as being a block or a block and a half from the railroad crossing in question. This highway runs east and west through the town of McBee, and the car approached the railroad crossing from the east, and collided with the passenger train of the defendant which was stationary, and which completely blocked the crossing. An electric light with a lighting capacity of 200 or 250 watts, maintained by the town, was suspended overhead about the center of the highway or street, on the east side of the crossing, at a distance variously estimated to be thirty-five to sixty feet away from the crossing. There was nothing to obstruct the view of the driver of the car from the point where he entered United States Highway No. 1, to the crossing, a block or a block and a half away.

The complaint alleges that as the car occupied by the plaintiff reached the said public railroad crossing, and was in the act of crossing thereover, the said automobile collided with the baggage coach of the defendant's passenger train, which the defendant had, through its servants, agents, and employees, carelessly and negligently permitted to stand in and across said public crossing and to block and obstruct the same, and which could not be observed on account of the darkness, without giving any reasonable or timely notice thereof, or warning, by the display of a suitable light or otherwise, or adopting any reasonable and proper means, by use of a flagman or otherwise, to warn, reasonably safeguard, or protect the traveling public approaching said public crossing in the nighttime from collision and injury. We might add, however, that the testimony shows that the crossing was obstructed, not by the baggage coach, as alleged in the complaint, but by a refrigerator express car which was attached to the tender of the engine, which car had a clearance from the ground of 44½ inches. The automobile occupied by the plaintiff collided with this car,

and was jammed beneath it. When the automobile came to rest, the windshield was against the wall of the express car.

In consequence of this collision the plaintiff suffered serious bodily injuries; both of her legs were broken between the hip and the knee, and she received severe injuries to her face and head, which confined her for a period of nearly eighty days in a hospital. Testimony on her behalf is to the effect that as an aftermath of these injuries she still suffers, and will continue to suffer, in consequence thereof.

The train in question had blocked the crossing at the time of the injury for about a minute and a half. The fireman was on top of the tender, with a lighted flambeaux (a feeble light), engaged in the process of filling the tender tank from a stationary water tank located on the west side of the track. He testified that he saw the automobile as it approached the train, and when it actually collided with the side of the express car. The engineer, who was sitting in the cab, did not witness the accident, but heard the crash of the impact. He immediately went to the scene of the accident with a flashlight, which he stated he required because it was dark beneath the express car, and he needed its illumination to see beneath the car and to discover the passengers in the automobile.

Testimony for the defendant showed that two small lights were in the cab of the engine, and one on the outside near the injector. The express car, which completely obstructed the highway, was unlighted. As testified to by the station agent, this car was a "deadhead," and was never lighted except when in use. The train crew consisted of five or six men. The crossing was not flagged by any one of the trainmen, nor was there any other light or electrical device or warning or caution of any kind, which would indicate the presence of a train on the crossing, or give notice that the highway was blocked. The locomotive engineer testified on cross examination: "I believe the baggage car (express car) itself created a shadow at the crossing. It would make a little dark spot right under where the eaves of the car were.

I reckon there was just a little eave shadow where the automobile hit. It was as light there as it was where the engine was; the lights were all on in the engine. It wasn't as light back there at the baggage car as it was at the engine because the car didn't have a light attached to the outside like the engine did. It was light up in front of the engine."

Further testimony necessary for an understanding of the issues made by the appeal will be later adverted to.

The trial resulted in a verdict for the plaintiff in the sum of $5,500.00. On motion for a new trial, this amount was reduced by the trial Judge to the sum of $4,000.00; the difference being remitted on the record by the plaintiff.

The appellant contends that the trial Court erred in refusing to grant its motion for a nonsuit:

(a) For the reason that no actionable negligence of the defendant has been proved:

(b) That if negligence of defendant was established, there was contributory negligence and contributory gross negligence on the part of the driver, all of which is imputed to plaintiff; and

(c) That plaintiff herself was negligent.

Upon the same grounds, the appellant in the course of the trial moved for a directed verdict in its favor.

We will discuss together the effect of the refusal of the trial Court to grant a motion for a nonsuit and for directed verdict, for even if it could be held under the testimony of the plaintiff and her witnesses that the nonsuit should have been granted, we are of the opinion that the testimony of the witnesses for the defense so aided plaintiff in the establishment of actionable negligence that it would have been error to have directed a verdict in favor of the defendant. *Mellette v. A. C. L. R. Co. et al.,* 181 S. C., 62, 186 S. E., 545.

A careful study of the entire evidence, together with an examination of the photographs introduced by the defendant, showing the situs, convinces us that the

trial Court was correct in submitting the issue of actionable negligence on the part of the railroad company to the jury. The plaintiff testified that when the car she occupied emerged from beneath the overhead electric street light, they entered a dark area. It may be that that dark area was intensified by the shadow cast by the overhanging eave of the blocking express car, the doors of which were closed. It evidently presented a solid wall. The train had blocked the crossing for a minute and a half, and doubtless would have occupied the crossing for several minutes longer while the fireman was drawing water from the water tank. The headlight of the locomotive—thirty or forty feet beyond the crossing—illuminated only the space in front of it. It afforded no light on the crossing itself. The train coaches attached to the rear of the blocking express car shed no light upon the crossing. The testimony for the plaintiff tended to show that it was a real dark night and that the weather was somewhat foggy. Other witnesses testified that the night was dark, but clear. No flagman or other attendant with a light was stationed at the crossing to give warning to travelers that the crossing was blocked. Nor was there any other signal or device provided to give notice of the presence of the train on the crossing. The testimony also shows that the lights and the brakes on the automobile occupied by the plaintiff were in such condition that the automobile could have been stopped within a reasonable distance, and that the occupants of the car had had no trouble in seeing a proper distance ahead of them prior to the collision. The testimony further shows that the plaintiff and the driver of the automobile never did see the express car, and that Miss Oletha Funderburk, sitting between them on the front seat, saw it only the moment before the collision.

In this state of affairs the Court is unable to say as a matter of law that the defendant was not guilty of actionable negligence, and this conclusion is supported by recent decisions of this Court, notably *Bober v.*

*Southern R. Co.,* 151 S. C., 459, 149 S. E., 257; *Meyers v. A. C. L. R. Co.,* 172 S. C., 236, 173 S. E., 812; and *Spiers v. A. C. L. R. Co.,* 174 S. C., 508, 178 S. E., 136. The facts in these cases differ somewhat from the facts disclosed in the case at bar, but their points of departure are not nearly equal to their points of contact. They are similar, and not sufficiently divergent, so that they would not have a controlling influence on our decision on this question of actionable negligence. The Court is not holding that the mere blocking of a railroad crossing by a train, under the facts disclosed here, constitutes *prima facie* negligence—nothing else appearing. It is an axiom that the facts speak the law, and the decision in each case must depend upon its own peculiar facts and circumstances. The submission to the jury of the question of actionable negligence here was proper. The inferences to be drawn from the facts were in doubt.

We are strongly impressed with the force and logic of appellant's argument, however, and convinced that there was contributory negligence and contributory gross negligence on the part of the driver, Rollins, which, concurring with the negligence of the defendant, was the proximate cause of the accident. And to illustrate this, it is necessary to refer to the testimony of Rollins, who controlled and managed the operation of the automobile in which the plaintiff sat. He said that when he turned into United States Highway No. 1, a block or a block and a half from the railroad crossing, and approached said crossing, he was driving at a rate of about twenty miles per hour; that when he had reached a point about 150 feet from the crossing, he was blinded by lights which he now believes came from an automobile on the opposite side of the train, and shining underneath it, and that the glare of this light so dazzled his vision that he never did see the car which obstructed the railroad crossing; that the light came from a direction slightly to his left, and in order to escape its blinding intensity he diverted his gaze to a point in front of his radiator cap, and because of the light he slowed his speed somewhat, but that he had

no intimation of the presence of the express car on the track, nor was he aware of it, until he saw the radiator cap fly up when it hit the sill of the express car. The speed of the automobile was such, however, that its entire front—radiator and cowl—was forced beneath the express car, and it could be extricated therefrom only when trainmen and others, securing a truck and attaching it thereto, succeeded in pulling it out.

While it is true that Rollins, the driver, was unfamiliar with the town of McBee, and had been there only once before—a time other than the day of the accident—he testified: "When I approached the railroad I knew the track was there, for I had crossed it that afternoon." And he testified further: "When I came to the town of McBee, I saw a railroad that I had to cross, and when I got to the main street of McBee, knew the railroad track was there, so when I came back through McBee, I knew the tracks were there."

He also testified that he did not see the electric street light overhead; that he paid attention only to the light that blinded him, which he thought came from an automobile on the other side of the track. He further said that he was going about fifteen miles per hour when he got to the crossing, and that his brakes and lights were in good condition.

It would seem impossible from a consideration of this testimony to escape the conclusion that Rollins, the driver, was guilty of gross contributory negligence as a matter of law. If he had exercised the slightest care for his own safety and for the safety of his passengers, prudence would have dictated to him that it was dangerous to proceed when he had no more effective vision ahead than a sightless man. He says that he knew the railroad track was there because he had crossed it that afternoon, just a few hours before, and that he knew he was approaching it, but continued on, according to his own testimony, at a speed of fifteen miles per hour. Even though he looked in front of his radiator cap, it is perfectly obvious that he saw nothing ahead of him. In fact, as stated by him, the presence of the blocking

car was made known to him, not from any sight he had of it, but only from the fact that the impact of the collision knocked the radiator cap off of the automobile.

As was said in *Robinson v. A. C. L. R. Co.,* 179 S. C., 493, 184 S. E., 96, 100: "It has been well said that it is always train time at a railroad crossing. The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it of the danger of colliding with a passing engine or train. *Chisolm v. Seaboard Air Line Railway Company,* 121 S. C., 394, 114 S. E., 500. And, because of the danger, there is imposed upon such person the duty of reasonable care and caution and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and, subject to applicable qualifications and limitations, he is required at least to look and to listen for an approaching engine or train before venturing to cross the track; and, if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and, if such failure results in injury, he is left without a remedy."

However, we do not agree with the contention made by the appellant that the negligence of the driver, Rollins, must be imputed to the plaintiff. Nearly all the Courts as shown in a comprehensive note by Judge Freeman, appended to *Hampel v. Detroit, etc., R. Co.,* 110 Am. St. Rep., 275, have expressly and unmistakably repudiated the doctrine that the contributory negligence of the driver of a private conveyance can, as a general rule, be imputed to a person riding in the conveyance with him; and the law almost universally now recognized is that when one accepts an invitation to ride in the vehicle of another, or is a passenger for hire therein, without any authority or purpose to direct or control the driver or the movements of the vehicle, and without any reason to doubt the competency of the driver, the contributory negligence of the owner or driver

of the conveyance will not be imputed to the guest or passenger, so as to bar him of the right to recover damages from third persons whose negligence or wrongful acts occasion injury to him while he is so riding. *Duval v. A. C. L. R. Co.,* 134 N. C., 331, 46 S. E., 750, 65 L. R. A., 722, 101 Am. St. Rep., 830; *Dean v. Pennsylvania R. Co.,* 129 Pa., 514, 18 A., 718, 720, 6 L. R. A., 143, 15 Am. St. Rep., 733.

This rule also applies where the guest or passenger is being carried gratuitously. In fact, probably in a great majority of the cases in which this question arises, no compensation for the transportation is made or contemplated. Then it would seem immaterial whether one is a passenger for hire or a mere guest or companion. *Duval v. A. C. L. R. Co., supra.*

From a review of many authorities, it is shown beyond question that the rule is not confined to cases of gratuitous transportation, but applies where the conveyance is hired and the passenger exercises no further control over the driver than to direct him to the place to which he wishes to be taken. *Little v. Hackett,* 116 U. S., 366, 6 S. Ct., 391, 394, 29 L. Ed., 652.

But if the passenger assumes to direct the driver or control the movement of the vehicle, he becomes chargeable with the contributory negligence of the driver. *Langley v. Southern R. Co.,* 113 S. C., 45, 101 S. E., 286.

The general rule is that in order to charge a passenger with the contributory negligence of the driver of the conveyance, the passenger must have assumed toward the driver the relation of master or superior. *Clark v. Columbia Ry., Gas & Elec. Co.,* 117 S. C., 11, 108 S. E., 178; *Dozier v. Charleston Consol. Ry. & Lighting Co.,* 133 S. C., 335, 131 S. E., 592.

A passenger cannot be said to be in possession or control of the vehicle in which he may be riding within this rule, merely because he gives directions or suggestions as to the route or place of destination.

The appellant argues that the plaintiff was not a guest or a passenger, but that the relation which existed between her and the driver was that of master and servant, or principal and agent. The testimony does not sustain or support this contention.

The general rule followed in this State is that negligence or contributory negligence of the driver of a motor vehicle cannot be imputed to a party in the car unless such party controlled the driver or had the right to do so. *Bober v. Southern R. Co., supra; Miller v. A. C. L. R. Co.,* 140 S. C., 123, 138 S. E., 675; *Dozier v. Charleston C. Ry. & L. Co., supra; Langley v. Southern R. Co., supra; Latimer v. Anderson County,* 95 S. C., 187, 78 S. E., 879; *Key v. Carolina & N. W. R. Co.,* 165 S. C., 43, 162 S. E., 582; *Little v. Hackett, supra.*

The undisputed evidence is that the automobile occupied by the plaintiff, her sister, and the driver, Rollins, was rented or hired by the plaintiff's sister, Miss Oletha Funderburk, from her great-uncle, Tom Funderburk, and its driver was put in charge and control of the management and operation of the automobile by its owner. The driver, Rollins, was the agent and servant of the owner of the automobile, and he was not the agent and servant of the plaintiff or her sister, Miss Oletha Funderburk. The evidence shows that the plaintiff had no part in the hiring of the car, and even if she had participated in the hiring she would have been no more than a passenger. As a matter of fact, we think the testimony is susceptible of the inference that she was a mere companion. As such, she had no right to control the management and operation of the automobile, nor did she attempt to exercise such control. Nor does the testimony show that she had any reason to doubt the competency of the driver, or the mechanical efficiency of the automobile. It also appears that she was a stranger to the route over which she was to be taken.

The fundamental basis of the law is so logically and lucidly discussed by Justice Field, speaking for a unanimous

Court, in *Little v. Hackett, supra,* that it should be quoted: "Cases cited from the English courts, as we have seen, and numerous others decided in the courts of this country, show that the relation of master and servant does not exist between the passenger and the driver, or between the passenger and the owner. In the absence of this relation, the imputation of their negligence to the passenger, where no fault of omission or commission is chargeable to him, is against all legal rules. If their negligence could be imputed to him, it would render him, equally with them, responsible to third parties thereby injured, and would also preclude him from maintaining an action against the owner for injuries received by reason of it. But neither of these conclusions can be maintained. Neither has the support of any adjudged cases entitled [them] to consideration.  *  *  * "

Again, the Court says: "There is no distinction in principle whether the passengers be on a public conveyance, like a railroad train or an omnibus, or be on a hack hired from a public stand, in the street, for a drive. Those on a hack do not become responsible for the negligence of the driver if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. If he is their agent, so that his negligence can be imputed to them to prevent their recovery against a third party, he must be their agent in all other respects, so far as the management of the carriage is concerned, and responsibility to third parties would attach to them for injuries caused by his negligence in the course of his employment. But, as we have already stated, responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury. From the simple fact of hiring the carriage or riding in it no such liability can arise. The party hiring or riding must in some way have co-operated in producing the injury complained of before he incurs any liability for it. 'If the law were otherwise,' as said by Mr.

Justice Depue in his elaborate opinion in the latest case in New Jersey [*New York, L. E. & W. R. Co. v. Steinbrenner*, 47 N. J. Law, 161, 171, 54 Am. Rep., 126], 'not only the hirer of the coach, but also all the passengers in it, would be under a constraint to mount the box, and superintend the conduct of the driver in the management and control of his team, or be put for remedy exclusively to an action against the irresponsible driver or equally irresponsible owner of a coach taken, it may be, from a coach-stand, for the consequences of an injury which was the product of the cooperating wrongful acts of the driver and of a third person, and that, too, though the passengers were ignorant of the character of the driver, and of the responsibility of the owner of the team, and strangers to the route over which they were to be carried.' "

Another leading case is that of *Duval v. A. C. L. R. Co.*, *supra*, which fully supports the above doctrine.

The appellant also contends that the plaintiff was negligent herself, in not observing due care for her own safety, and that such negligence contributed to the accident as a proximate cause as a matter of law.

The rule governing the conduct of the plaintiff as an occupant of the car is thus stated in 42 C. J., § 947, p. 1169: "Even though the contributory negligence of the driver of a motor vehicle is not imputed to the occupant thereof, he must exercise ordinary care for his own safety, that is, such care as an ordinarily prudent person would exercise for his own safety and security under the same or similar circumstances, and where his failure to do so contributes proximately with the negligence of others to cause his injuries he is guilty of contributory negligence which will defeat a recovery. In such cases recovery is denied to the occupant or guest because of his own negligence and not upon the ground of the negligence of the driver being imputed to him. In accord with the general rule, the failure of the occupant to use

ordinary care must contribute proximately to cause his injuries or he will not be barred from recovery therefor."

It has likewise been held that in the absence of any fact or circumstance indicating that the driver is incompetent or careless, an occupant of a motor vehicle is not required to anticipate negligence on the part of the driver. Thus, in the absence of any fact or circumstance indicating the contrary, he need not anticipate that the driver, who has exclusive control and management of the vehicle, will enter a sphere of danger, will omit to exercise proper care to observe the approach of other vehicles, or fail to signal the approach of the vehicle which he is driving, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel. But an occupant of a motor vehicle may not abandon the exercise of his own faculties and intrust his safety absolutely to the driver, regardless of the imminence of the danger, or the visible lack of ordinary care on the part of the driver to avoid harm. If he fails to use ordinary care, including the exercise of his own senses of sight, hearing, and perception to protect himself under such circumstances, he is guilty of contributory negligence. 42 C. J., 1170.

The standard of care to be observed and exercised by the occupant is of course ordinary care under the circumstances. It cannot be said, however, that in every case and under all circumstances it is the duty of an occupant of a motor vehicle to use his senses in order to discover approaching vehicles or other dangers, or that his failure to do so would be negligence. This is well illustrated in a decision of the Supreme Court of Colorado, *Campion v. Eakle,* 79 Colo., 320, 246 P., 280, 283, 47 A. L. R., 289, where it is said: "If one riding as a guest in the car of another were required to look out for danger and warn the driver, a most uncomfortable and harassing position would be created for the driver of a car who happened to have four or five passengers as

guests; and it might well be that, if an accident happened, it could be charged to the negligence of the guests in distracting the attention of the driver as he approached or crossed every street intersection."

As was also stated in *Birmingham Ry., etc., Co. v. Barranco*, 203 Ala., 639, 84 So., 839, 842: "In other words, the duty imposed upon such person, whatever his seat in the vehicle, is created by either known dangers or perils that the attendant circumstances reasonably suggest or foreshadow. The duty is therefore not original with respect to the operation of the vehicle, but resultant, and that only from known and appreciated circumstances capable of bringing it into effect. Otherwise, the law would be held to sanction this irrational result: Such person would be allowed to close his senses to known dangers or to perils reasonably suggested by the attendant circumstances indicated, in blind reliance upon the unaided care of another."

And the same reasoning is true if applied to a passenger in a hired car.

In order for the defendant to sustain its position that the plaintiff is barred of recovery because of contributory negligence, it must show that the evidence conclusively establishes negligence on the part of the plaintiff without which the accident would not have occurred, and that the evidence was susceptible of no other reasonable inference. The defendant must go beyond showing that there was some evidence of negligence on the part of the plaintiff, and establish as a matter of law that such evidence was so clear and uncontradicted as to warrant the Circuit Judge in taking the question away from the jury.

The plaintiff has never, before the day of the accident, been in the Town of McBee, and consequently was unacquainted with its streets and highways, and unaware of the presence and location of the railroad crossing. She was a stranger in a strange town, at night, ignorant of landmarks, and unfamiliar with her surroundings. The

lights and shadows in the street might reasonably have confused her. It is true that on the way to Hartsville her route lay across this railroad crossing, which had been crossed in the afternoon. On the return trip, however, it was dark. The window glasses of the automobile in which she rode were closed, as was the windshield. She testified that she did not know where to look for a railroad, and did not remember its presence, and not knowing of its presence it follows that she did not look and listen before entering upon it. She said she remembered going out from under the circle of the street light, but from that moment on until she regained consciousness she did not remember any details of the accident. She does state unequivocally that she did not see the train, or have any idea that it was there. Under all the circumstances surrounding her at the moment of the accident, we are unable to say as a matter of law that the trial Judge erred in submitting this question to the jury.

The defendants cite, and apparently rely very strongly upon, the case of *Robison v. A. C. L. R. Co., supra.* The facts in that case, however, are quite different from the facts in this case. In the *Robison case* the plaintiff's intestate was riding on the crossbar of a bicycle propelled by another Negro boy at the time of the accident, which occurred at a railroad crossing on North Dargan Street in the City of Florence. Both boys were thoroughly familiar with the particular railroad crossing, and had for a year almost daily passed over it. They were not only familiar with and saw the railroad crossing, but they were familiar with the schedule of the passenger train which collided with them. Furthermore, the accident in that case occurred in broad daylight. In this case the accident occurred in the "dead of night" (as testified to by a citizen of McBee), between 9 and 10 o'clock. In the *Robison case* the Court held that the two Negro boys were guilty of gross contributory negligence as a matter of law, because they attempted to race across the railroad track in front of the oncoming train, which under the testimony they were bound to have seen and heard if they had looked

and listened at a time and place when such looking and listening would have been effective. It is obvious that the facts in the *Robison case* are too dissimilar from the facts in this case to make that case controlling.

There is no testimony in this case that the plaintiff had any reason to believe that the automobile in which she was riding was mechanically imperfect, or that the driver was guilty of driving negligently. Nor would we say, under the testimony, as a matter of law that she should have been aware of the particular danger which caused the accident. It may be that if the defendant railroad company had stationed a flagman with a lantern at the crossing to warn motorists of the obstruction caused by the train, she would have seen him in time to have warned the driver of the presence of the train across the highway, because there is no testimony that she was blinded by the glare of the light which so seriously affected the driver's vision. But there was no flagman there.

In the case of *Chesapeake & O. R. Co. v. Meyer,* 150 Va., 656, 143 S. E., 478, 483, the Court said: "It is true that upon the approach of a crossing both the driver and the passenger must exercise ordinary care to avoid an accident, but that degree of vigilance required is not the same in each instance. The passenger does, and must of necessity, in a large measure rely upon the driver. *Director General v. Lucas, supra* [130 Va., 212, 107 S. E., 675]. If this were not true, we would have as many drivers as there chanced to be passengers; and so this method of locomotion would become even more hazardous than it now is. Something must be left to the pilot."

The appellant also makes the issue that the driver of the automobile, Rollins, and the plaintiff were engaged in a joint or common enterprise, and for this reason the driver's negligence should be imputed to the plaintiff.

The general rule was early established that if two or more persons unite in the joint prosecution of a common purpose under such circumstances that each

has authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. *Nesbit v. Town of Garner,* 75 Iowa, 314, 39 N. W., 516, 1 L. R. A., 152, 9 Am. St. Rep., 486. But it does not follow that, because several persons are occupants of the same vehicle, they are necessarily engaged in a joint venture within the rule.

The first element that must be found to be present before two parties can be said to be engaged in a joint enterprise is, as the very name of the relationship necessitates, that they must have some common purpose of pleasure or profit, and must be acting toward the accomplishment of this purpose at the time when the relationship is sought to be established.

The cases on the question of joint enterprise are numerous. They are almost wholly concerned with whether, admitting that the driver of an automobile and a person riding with him have a common purpose in making the trip, further conditions exist from which it can be said to appear that the negligence of the driver should be imputed to the passenger. The legal theory upon which such imputation is allowed is that if two parties are engaged in a joint enterprise each is the agent of the other, and each the principal of the other, so as to bring into force the fixed precepts of the law of agency.

It clearly appears from the testimony that the plaintiff and Tom Rollins, the driver of the automobile used in making the trip, had no plan or purpose that could possibly be said to be common to both of them. The plaintiff was making the trip in order to interview the principal of a school in Chesterfield County, in regard to a position in the school. Rollins was making the trip because he had been directed to do so by his employer, the uncle of the plaintiff who owned the car. Rollins had no interest in whether the plaintiff obtained the teaching position, or even had the inter-

view with the principal. His sole interest was to drive the young ladies to their destination and return them to their home.

In our discussion, we have already shown that on this ■ trip Rollins was not going as the agent or servant of the plaintiff. The car and the driver were hired by Miss Oletha Funderburk from her uncle, and Rollins was placed in charge of the car because he was familiar with it and had been driving for Mr. Funderburk for about eight years. The plaintiff had nothing to do with the securing of the car, and did not know that Rollins was going to drive until her sister informed her of the arrangement. Rollins throughout his testimony said that neither the plaintiff nor Miss Oletha Funderburk exercised or attempted to exercise any control over his management of the car. Under these facts the Court is unable to say as a matter of law that the plaintiff and Rollins, the driver, were engaged in any joint or common enterprise, such as would create the relation of principal and agent or of master and servant, so that the driver's negligence would be imputed to her.

The appellant complains that the trial Judge should ■ have granted its motion for a new trial, for the reasons, first, that the verdict was contrary to the facts; and, second, excessive. From what already appears in this opinion, we are satisfied that the trial Judge committed no error on these two points. The plaintiff, as shown by the facts, was seriously injured, and we do not think that the verdict was excessive, nor opposed to the facts.

The last assignment of error is that the trial Judge ■ ■ committed error in excluding the testimony of one Yerby, who was a witness for the defendant. It is contended by the appellant that this testimony constituted a part of the *res gestae*. It was excluded by the trial Judge because this witness came up to the scene of the wreck after it occurred, and the conversation between this witness and Miss Oletha Funderburk, which he was attempting to re-

peat, might have been as much as an hour and a half after the accident. The testimony excluded was to the effect that Miss Oletha Funderburk stated to the witness in the baggage car, to which the injured persons were taken following the accident, that she had spoken to Rollins, the driver, two or three times before the accident about driving too fast. Questions of this kind must be left very largely to the discretion of the trial Judge, who is compelled to view all the circumstances in reaching his conclusions, and this Court will not reverse his ruling unless it clearly appears from undisputed circumstances in evidence that the testimony ought to have been admitted or rejected, as the case may be. *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 102 Am. St. Rep., 661; *Nelson v. Georgia, C. & N. Ry.,* 68 S. C., 462, 47 S. E., 722; *Young v. Seaboard A. L. Ry.,* 75 S. C., 190, 55 S. E., 225; *Puryear v. Ould,* 81 S. C., 456, 62 S. E., 863; *Templeton v. C. & W. C. R. Co.,* 117 S. C., 44, 108 S. E., 363; *York v. Charles,* 132 S. C., 230, 128 S. E., 29; *Snipes v. Augusta-Aiken Ry. & E. Corp.,* 151 S. C., 391, 149 S. E., 111; *Chantry v. Pettit Motor Co.,* 156 S. C., 1, 152 S. E., 753.

No hard and fast rule can be laid down applicable to every case. It was aptly held in the case of *Batchelor v. A. C. L. R. Co.,* 196 N. C., 84, 144 S. E., 542, 544, 60 A. L. R., 1091, that: "The test as to whether a declaration is a part of the *res gestae* depends upon whether the declaration was the facts talking through the party or the party talking about the facts."

All exceptions are overruled, except as to the negligence of the driver.

The judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BONHAM concur.

MR. JUSTICE BAKER concurs in result.

MR. JUSTICE CARTER did not participate.

Mr. Justice Baker (concurring in result) : I concur in the result of the opinion written by Mr. Justice Fishburne, as I do not consider this case comes within the doctrine of common enterprise as set forth by the writer hereof in *Lusk v. State Highway Department,* 181 S. C., 101, 186 S. E., 786.

As to actionable negligence being shown, I feel bound by the case of *Myers v. A. C. L. R. Co.,* 172 S. C., 236, 173 S. E., 812.