## HIDER v. GELBACH.
### No. 5071.

Circuit Court of Appeals, Fourth Circuit.
May 21, 1943.

694

Robert McC. Figg, Jr., of Charleston, S. C., for appellant.

William F. Marsteller, of Cleveland, Ohio, and Thomas P. Bussey, of Charleston, S. C., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Appellee (hereinafter called Gelbach) brought a civil action against appellant (hereinafter called Hider) for the recovery of $35,000 damages for personal injuries alleged to have been sustained by Gelbach and caused by Hider's negligence which resulted in an automobile collision. The case was tried before United States District Judge Waring and the jury awarded a verdict in favor of Gelbach for $14,000.

Hider has duly appealed to this Court and three questions are presented for our consideration. The first of these is whether the District Judge abused his discretion in restricting Hider's right of cross-examination of a witness respecting a detail of the accident. The second question is whether the District Judge erred in refusing to submit to the jury the issues of joint or common enterprise. Finally, we are asked to decide whether the evidence was susceptible of an inference of such recklessness or wilfullness on the part of Hider as to justify the submission of the issue of punitive damages to the jury.

Everette H. Krueger, his son Everette, Jr., and his daughter Ann planned to "jointly take a vacation by driving through Virginia and the Carolinas and to Florida for a few days". They left Hollins College in Virginia on March 21, 1941, with three of Ann Krueger's classmates, Becky Gale, Mary Pearson and Betty Gelbach (the appellee), who had been invited by Ann to be her guests on the trip.

On March 22, 1941, Everette H. Krueger, Sr., was driving his car, a new Mercury station wagon, South on Route 15-A near Wells, South Carolina. Approximately two-thirds of the way through a blind right angled curve to the left, he noticed a car approaching from the opposite direction. This vehicle, a Hudson automobile driven by Hider (the appellant), seemed to be in distress or out of control. When first observed by Everette H. Krueger, Sr., the Hudson was off the paved portion of the road. It then pitched back on to the pavement, partly off again and finally back across the pavement where it went over the center line of the highway and swung around in a long skid, so that it ultimately faced in the opposite direction from that in which it had been coming.

Everette H. Krueger, Sr., believing that Hider's car would block the Western portion of the road, veered to the left in order to avoid a collision; but the right front of his car came in contact with the left rear of Hider's car. When Everette H. Krueger, Sr., first saw the Hudson out of control, he applied his brakes and brought his car to a virtual stop in approximately 75 feet without laying down any skid marks. He also testified that he was driving about 30 miles per hour just prior to the accident. The distance required to bring an automobile with four-wheel brakes in good condition to a complete stop from a speed of 30 miles per hour is about 71½ feet, if the complete braking power is used and the safety of the passengers is disregarded.

Hider and his wife were driving North on Route 15-A when he started to pass a wagon and mules in front of him. As he did so, he noticed the station wagon coming out of the curve in question. Accordingly, he cut back behind the wagon and mules in order to allow the station wagon to pass. In so doing, however, he lost the edge of the road and his right front whee went off the paved portion of the highway and on to the soft dirt shoulder. Hider eventually managed to get his car back on to the pavement and applied his brakes, leaving an overall skid mark of 115 feet. This caused the front wheels to act as a pivot and the Hudson swung around to collide with the station wagon.

Disinterested witnesses who saw the accident testified that Hider was travelling at speeds ranging from 60 to 80 miles per hours, and that "if he had been getting any more he would have been flying". One of these witnesses was in the best position to judge Hider's speed, since she was driving a car in the same direction as Hider and he had passed her just prior to the accident. She was thus offered an opportunity to contrast his speed against her own speedometer and she stated that Hider was driving 80 miles an hour. The legal rate of speed at the point of the accident was 55 miles per hour.

We shall now discuss the questions raised on appeal, in the light of these facts.

1. *Scope of Cross Examination of Witness Everette H. Krueger, Sr.*

Everette H. Krueger, Sr., testified on direct examination that his car had come to a standstill and that the Hudson "bounced back" when it ran into the station wagon. In cross examining the witness, Hider's counsel sought to elicit from him the admission that his car was driven into the Hudson by questioning him on the actions of the vehicles at the point of impact. Ten questions had been directed to the witness on this point and he had answered them to the best of his ability, when the District Judge, on his own motion, refused to allow further cross-examination on this particular matter.

At the outset, it would seem to be immaterial whether the station wagon was at an absolute standstill at the time of the accident or whether it was moving at a speed as high as five miles per hour, a possibility frankly admitted by Everette H. Krueger, Jr. But even if this issue be deemed important in Hider's case, the entire matter had been thoroughly propounded and exhausted in the direct and cross examination of the witness before the District Judge interceded to terminate unnecessary and wearying repetition. Moreover, this particular witness had already been asked ninety-five questions on cross examination. We, therefore, feel that the action of the District Judge was eminently correct and in accord with the guiding rule of Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L. Ed. 624:

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. * * *

"There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him."

See, also, Green v. McDaniel, 168 S.C. 533, 168 S.E. 197.

Accordingly, mindful of the important function of cross-examination to obtain additional information and to extract harmful admissions, we de not feel that the discretionary action of the District Judge in the instant case was an abuse of his authority; nor did he impair or abridge any substantial right of Hider.

### 2. Joint or Common Enterprise.

South Carolina has recognized and applied the doctrine that whenever the driver of an automobile and an occupant thereof are engaged in a joint or common enterprise, the negligence of the driver may be imputed to the occupant. Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742, Crapse v. Southern R. Co., 201 S.C. 176, 21 S.E.2d 737. The Funderburk case contains the following relevant language at 181 S.C. at page 424, 187 S.E. at page 747:

"The general rule is that in order to charge a passenger with the contributory negligence of the driver of the conveyance, *the passenger must have assumed toward the driver the relation of master or superior.* * * *

"A passenger cannot be said to be in possession or control of the vehicle in which he may be riding within this rule, merely because he gives directions or suggestions as to the route or place of destination. * * *

"The cases on the question of joint enterprise are numerous. They are almost wholly concerned with whether, admitting that the driver of an automobile and a person riding with him have a common purpose in making the trip, *further conditions exist from which it can be said to appear that the negligence of the driver should be imputed to the passenger.*" (Italics ours.)

Admittedly the driver of the car, Everette H. Krueger, Sr., and the passenger, Gelbach, were both going to the same place (Florida) for the same purpose (a vacation), but the record in the instant case is utterly barren of any "further existing conditions" which are necessary in order to invoke the principle of imputed negligence based on joint or common en-

terprise. "Further conditions" are those which establish the relationship of principal and agent, Lusk v. State Highway Dept., 181 S.C. 101, 186 S.E. 786, and Hider conceded that the facts of the instant case did not establish "the relationship of principal and agent". Certainly it cannot be said that Gelbach exercised any control over the station wagon or its driver. Indeed, the instant case would seem to come squarely within the doctrine of Key v. Carolina & N. W. R. Co., 165 S.C. 43, 162 S.E. 582, at page 583, where the court stated: "A mere guest or gratuitous passenger riding with the driver of a motor vehicle by invitation is not engaged in a common or joint enterprise with the driver, and this is so notwithstanding the guest asks to be driven to a certain place, indicates the route to be taken, or points out the dangers to be encountered, or that both parties have certain plans in common."

Accordingly, inasmuch as the evidence was not even susceptible of the inference that a joint or common enterprise existed, the District Judge was correct in refusing to submit this issue to the jury.

### 3. Punitive Damages.

The record does not indicate whether the general verdict for Gelbach in the sum of $14,000 included any punitive damages. As a result of the accident, Gelbach received an eleven inch scalp wound, numerous painful lacerations and sprains, symptoms of brain concussion, and a compressed fracture of one of her vertebra. She also suffered from periodic headaches which affected her eyesight. The remaining medical testimony was in conflict as to whether Gelbach could safely bear children, whether arthritis would develop in later life, and whether her injuries would have permanent effects. In the light of the substantial and serious nature of the injuries sustained, we are not altogether certain that the award by the jury of $14,000 actually did include any punitive damages.

In any event, we are satisfied that the question of punitive damages was properly submitted to the jury by the District Judge. There was evidence that Hider approached, and started to pass a vehicle, while entering a sharp curve at a speed of about 80 miles per hour. This conduct not only violated the general speed limit of the state but it was also contrary to Sec-

tion 1616 of the 1942 Code of Laws for South Carolina which provides as follows:

"Limitations on overtaking on the left—driving to left side of roadway.—(a) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.

"(b) No vehicle shall be driven to the left side of the roadway under the following conditions:

"When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed."

Indeed, apart from the conscious, intentional and wilful violation of the above statutory provisions by Hider, the evidence of his reckless and wanton disregard of his own life and safety, as well as the lives and safety of other travelers on the highway, afforded the basis of an inference sufficient to carry the case to the jury, under proper instructions, for a determination of the question of punitive damages. Cf. Mack v. Life & Casualty Ins. Co., 171 S.C. 350, 172 S.E. 305. As stated in Fisher v. J. H. Sheridan Co., 182 S.C. 316, 324, 189 S.E. 356, 359, 108 A.L.R. 981:

"* * * it is for the jury to decide under all the facts and circumstances whether the injury and death of plaintiff's intestate was the result of mere inadvertence, or of indifference to the rights of those who travel the highways, or a conscious failure to be careful for their safety. The violation of a statute is sufficient to carry the issue as to punitive damages to the jury under proper instructions by the court and may warrant the inference of reckless, willful, or wanton conduct, but it is not obligatory as a matter of law to demand such a finding in every case where the question arises."

The facts of the instant case are clearly distinguishable from those presented in Cubbage v. Roos, 181 S.C. 188, 186 S.E.

794, and Bell v. Atlantic Coast Line R. Co., S.C., 24 S.E.2d 177, so as to render inapplicable the doctrine of these authorities. See Ford v. Atlantic Coast Line R. Co., 169 S.C. 41, 168 S.E. 143; Callison v. Charleston & W. C. R. Co., 106 S.C. 123, 90 S.E. 260.

For the reasons assigned, the judgment of the District Court is affirmed.

Affirmed.